## JANACE LARSON, A MINOR, BY JULIA LARSON, HER GUARDIAN, v. TED R. STOWE.[1]

April 1, 1949.

No. 34,859.

*Kenneth C. Weyl* and *J. H. Sylvestre,* for appellant.

*Harroun, Anderson & Poseley,* for respondent.

[1]Reported in 36 N. W. (2d) 601.

Matson, Justice.

Appeal from an order vacating a prior order of the court approving a compromise and settlement of a minor's damage claim for personal injuries.

Six-year-old Janace Larson, on October 16, 1944, at McIntosh, Minnesota, was struck by defendant's motor truck. The right front truck wheel passed over and injured her legs. Locally she was treated by Doctors William H. Henney and Abraham Shedlov until October 18, when she was placed under the care of Dr. Stanley Maxeiner at the Asbury Hospital in Minneapolis. She was released and returned to her home December 8, 1944. Upon the petition of her father, the trial court on February 15, 1945, pursuant to M. S. A. 540.08, approved a compromise and settlement of her claim for the sum of $4,000, inclusive of special damages of $1,852.95. The order of approval and the release covered "all *known and unknown* personal injuries * * * which the said minor has or may *hereafter have.*" (Italics supplied.) Janace's father, as her natural guardian, was not then represented by legal counsel, and all papers, including the petition and release, were prepared by the attorney for defendant's insurer. The petition represented to the court that—

"Janace Larson sustained comminuted fractures * * * of the right tibia and fibula, possible fracture of the pelvis, extensive soft tissue injury to the region of the left knee with an involvement of the soleus and gastrocnemous muscles and with an involvement of the femur in this area, as well as abrasions to the face, abrasions to both thighs and other abrasions;" and "that the fractures of the right tibia and fibula were reduced satisfactorily and that she has satisfactorily recovered from said injuries but that * * * she has sustained some permanent disability, particularly to the left leg, due primarily to the instability of the left knee joint and that there is permanent scarring of the left knee and leg."

The only affidavit filed in support of the petition was that of Dr. Henney, who stated that there was no present deformity of Janace's right leg and *that the left leg was functionally perfect,* although the

side of the knee was permanently disfigured by a huge scar. No oral testimony was taken. Janace's parents understood that there would be some permanent disability to the left knee. No mention was made of an epiphyseal injury. There was no overreaching, concealment, or misrepresentation. The trial court, in view of the doubtful liability, considered the settlement a very fair and liberal one.

Several months after the settlement, Janace's parents noticed that her left leg was becoming crooked and that the knee was enlarging. Upon advice of the family doctor, nothing was immediately done. In May 1947, Janace was examined by Dr. John H. Moe of Minneapolis, who found a marked knock-kneed angulation and a shortening of the left leg. X rays taken in June 1947 revealed that Janace had actually sustained an injury to the lateral epiphysis of the lower end of the femur, which resulted in a stoppage of growth of the epiphysis and subsequent progressive knock-kneed deformity because of the continued growth of the medial half of the epiphysis and cessation of growth of the lateral half. In August 1947 an operation was performed. A series of additional operations was prescribed with a view to equalizing the length of her two legs and stopping the progressiveness of her deformity. Janace will lose from one and one-half to two inches in height. Dr. Moe was of the opinion that the epiphyseal injuries had not theretofore been recognized.

A motion by Julia Larson, the guardian of Janace, to vacate the prior order approving the original compromise and settlement was heard January 7, 1948, and on July 26 the motion was granted, on the ground that Janace had sustained separate and distinct injuries which were not contemplated or considered by the parties when the settlement was made. Upon defendant's appeal, we have two issues: (1) May a release be set aside for mutual mistake of fact where the order approving the settlement and agreement of release expressly released defendant from *unknown as well as known injuries?* (2) Does the evidence sustain the court's finding of mutual mistake?

■ It is well settled in this state that, although a compromise and settlement of damages sustained by a minor be couched in express terms releasing the defendant entirely from damages for *unknown as well as known* injuries and be executed without fraud or overreaching of any kind, the trial court may vacate its approval of such settlement, made pursuant to § 540.08, if, in the cautious exercise of its discretion, it appears that separate and distinct injuries were sustained by the minor which, as a matter of mutual mistake, were not contemplated or considered in the settlement. Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; Elsen v. State Farmers Mut. Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652; Clark v. Gronland, 221 Minn. 505, 23 N. W. (2d) 169; 30 Minn. L. Rev. 505, 524. Is the release, however, incontestable because the petition for approval specifically asked the trial court for authority to settle for unknown as well as known injuries? A determination of whether a mutual mistake of fact induced the settlement is not foreclosed by the express language of any pleading. Express language alone, wherever found, is not sufficient, but must be coupled with the factual element of an existing intent to include unknown injuries. The scope of the intent of the parties is a question of fact for the trier of fact. See, Larson v. Sventek, 211 Minn. 385, 1 N. W. (2d) 608. The existence of injuries of such a character that reasonable parties could not have entered into the agreement except through error is an element that weighs heavily against the finality of all-inclusive language. Although the trial court's discretionary power to set aside its prior approval of a personal injury settlement is to be exercised cautiously, the strict rules governing releases from liability for other torts or breaches of contract do not apply. In the case of prolonged disability from injuries, the compelling need for immediate cash provides an economic compulsion that may lead to hasty and improvident settlements, even though fraud and undue influence be wholly absent. It is submitted that by reason of the special interest of the public in preventing injured persons from unnecessarily becoming burdens upon society in consequence of their improvident settlement of injuries, the well-developed tendency of

the law—which though acknowledged in practice is usually not acknowledged in name—is to adopt a more liberal rule for the setting aside of releases in these cases than otherwise obtains. In the case of a minor, who in fact is not possessed of unlimited contractual competence in his own right, justification for a more liberal rule is manifest. See, Stephens, *Medico-Legal Aspects of Compromise and Settlements,* 30 Minn. L. Rev. 505; 5 U. of Chicago L. Rev. 455, 460; cf. majority and dissenting opinions in Larson v. Sventek, 211 Minn. 385, 1 N. W. (2d) 608. It is for these reasons that the trial court may exercise a sound discretion in looking behind the shield of phraseology to ascertain what injuries the parties contemplated and considered when the settlement was made.

■ The evidence supports the court's finding that Janace sustained separate and distinct injuries which were not contemplated or considered when the settlement was made. A mistake of fact, as a basis for setting aside a settlement, must be mutual. None of the physicians employed by the parents prior to the settlement had observed or knew of the injury to the epiphysis. Dr. Harvey Nelson, a physician employed by defendant's insurer, examined Janace on December 8, 1944, and on that day made a written report to his insurance company. In the subdivision of his report covering what his examination revealed, he said:

"* * * There is considerable new bone formation along the lateral margin of the shaft of the femur due to an injury to the bone and *likely an injury to the epiphysis* of the left femur." (Italics supplied.)

Immediately following this section of the report is a subdivision designated DIAGNOSIS. *Dr. Nelson's diagnosis made no mention of any injury to the epiphysis.* His diagnosis was substantially the same as that of the physicians retained by the parents, and it corresponds to the representations made to the court in the petition for approval of the settlement. Apparently whatever he had observed in the way of injury to the epiphysis was of so little consequence that he either overlooked it or forgot to include it in the diag-

nosis. In Funk & Wagnalls New Standard Dictionary (1945), the term "diagnosis" is defined as "a summary of symptoms with the conclusion arrived at therefrom; determination of the distinctive nature of a disease." The very meaning of the word *diagnosis* indicates that the primary purpose of an examination by a physician is to arrive at a diagnosis upon which reliance may be placed. Any layman would naturally assume, and reasonably so, that the diagnosis found in a doctor's report would cover any and all known injuries. With due regard for Dr. Nelson's report, the evidence as a whole sustains a finding that none of the parties had in mind an injury to the epiphysis when the settlement was made. It is true that the insurer's claim agent exhibited the report of Dr. Nelson to Janace's parents prior to the settlement when he called at their home, but this is of no significance. They would naturally look to the diagnosis *only* for a summary of the injuries. It is only reasonable that all parties concerned (and they were not physicians) would derive from the report only the meaning which the diagnosis itself conveyed. Dr. Nelson's report was not exhibited to the trial court at the time of the settlement, and no mention thereof was made. Had his report been shown to the trial court or to any other court, the single and casual statement that there was "likely an injury to the epiphysis," made wholly outside the scope of the diagnosis, would not have directed attention to it as an injury separate and distinct from those mentioned in the diagnosis. Laymen cannot reasonably be expected to go beyond a physician's professional diagnosis in ascertaining a person's injuries.

The order of the trial court is affirmed.

Affirmed.