JAMES McGOVERN, A MINOR, BY HIS FATHER AND
NATURAL GUARDIAN, DONALD J. McGOVERN, v.
BASIL LUTZ AND ANOTHER.[1]

June 25, 1954.

No. 36,227.

[1]Reported in 65 N. W. (2d) 637.

*Richards, Janes, Hoke, Montgomery & Cobb, Greer E. Lockhart,* and *Crane Winter,* for appellant.

*Benedict S. Deinard,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order of the district court of Hennepin county granting plaintiff's motion to vacate, annul, and set aside the court's previous order of September 20, 1948, approving a settlement of this case.

On July 10, 1947, James McGovern, who was then seven years of age, was injured at the intersection of Fortieth street and Nicollet avenue in Minneapolis when he was struck by a car driven by defendant Basil Lutz. He was riding on the bars of a bicycle operated by one Orvill Klemp, Jr. The boys were proceeding south on Nicollet avenue, and, as they approached the intersection, they turned left into the path of defendant's automobile, which was proceeding north on Nicollet avenue. Defendant applied his brakes but was unable to stop without hitting the boys and their bicycle. Both boys were injured. James McGovern was knocked unconscious and was taken by ambulance to General Hospital shortly after the accident.

Donald J. McGovern, plaintiff's father, brought one action as father and natural guardian for the injuries received by his minor son and another in his own behalf for consequential damages. The actions were begun on August 14, 1947, and the consolidated trial was begun on September 13, 1948. Plaintiff presented all his evidence relating to liability and also medical testimony concerning the injuries received by the minor. Defendant presented his medical testimony on the third day of the trial, but before defendant presented any evidence on the issue of liability, the parties agreed to settle the actions. The case of Donald J. McGovern, the father, brought on his own behalf for consequential and special damages

was settled for $1,000, and the minor's case for the injuries received was settled for $700. Plaintiff's petition requesting the court's approval of the settlement of the actions recited that the offer in settlement was made in the presence of the court, but the Honorable Levi M. Hall, who tried the case, stated that he did not participate in the negotiations for settlement. Plaintiff stated that Judge Hall asked him some questions concerning the proposed settlement but that he did not remember the substance of those questions. Irving Juster, who was plaintiff's attorney at the first trial, testified that Judge Hall did not interrogate the father. The terms of the settlement were dictated to a reporter in open court. Plaintiff's attorney was allowed $175 in fees out of the $700 awarded to the minor. The remaining $525 was invested, pursuant to the court's order, in Series E United States Savings Bonds, which the clerk of the Hennepin county district court was directed to hold during the minority of James McGovern or until the further order of the court. On September 20, 1948, the court approved the settlement, and a dismissal of the action with prejudice was filed the same day.

On September 21, 1948, Donald J. McGovern executed an instrument entitled "Release and Parents' Indemnity Agreement Covering Injuries Known and Unknown" to defendant Basil Lutz. The release itself apparently was not approved by the court. It provided a release of defendant and all other persons legally liable therefor—

"from all liability * * * for * * * loss, injuries and damage, known and unknown, direct, indirect and consequential, suffered or sustained or which may be suffered or sustained as a result of said accident, including past, present and future, known, unknown and unexpected consequences thereof; that the undersigned do hereby expressly, explicitly and intentionally compromise and settle all claims and causes of action for all injuries, including those which are unknown as well as those which are known, suffered by themselves and/or by said minor in and as result of, or which may hereafter develop or in any way arise out of or result from, said accident; that the amount of the aforesaid consideration has been agreed upon and

fixed accordingly; that by reason of the premises no mistake of fact with respect to the nature or extent of any of the aforesaid loss, injuries or damage, or of the consequences thereof, shall render this Release contestable or voidable or constitute a ground for setting it aside * * *."

On January 21, 1953, plaintiff moved the court to vacate the order approving the settlement on the ground that it was made under a mutual mistake of fact. Several affidavits were filed showing that James McGovern is now totally deaf in his right ear. At the hearing on the motion to vacate the order approving the settlement, the father testified that he would not have settled if he had known that the minor had suffered an injury to the hearing structure and that the doctors testified that the deficiency in hearing at that time was only psychological. The parents also stated in their affidavits in support of the motion that they did not know of the damage to the minor's hearing structure and that they would not have accepted the settlement if they had known the true facts. They said that they did not contemplate that the settlement would cover damage to the minor's hearing structure or the possibility of permanent deafness in his right ear. The father admitted that he knew of a deficiency in his son's hearing at the first trial. He also admitted that the nerve of hearing was included in the portion of the complaint alleging damage to the minor.

On September 14, 1953, the trial court ordered that its order approving the settlement be vacated, annulled, and set aside and that the case be reinstated upon the calendar as a jury case for trial. The trial court gave the following reasons for its order:

"* * * that the said setlement and the aforesaid order approving the same were induced and made under and by a mutual mistake of fact shared in by the parties to said settlement and by the Court that there then was no injury to the structure of the minor's ears, whereas there in fact existed at the time of said settlement serious, permanent structural damage to his eighth cranial nerve and to the cochlea in his right ear which has rendered him totally deaf in that ear; that said injuries resulted from the accident involved in this

case, and were and are separate and distinct injuries which, as a matter of mutual mistake, were not known or contemplated or considered by the parties or the Court when the settlement was made and approved; that there was no intent to include in such settlement such separate, distinct and unknown injuries, and that said settlement was inadequate and inequitable and that the order approving the same should be set aside * * *."

Appeal to this court was taken from the above order.

There is no basic disagreement as to the injury suffered by the minor in the accident. Both sides agreed that the injury consisted of a skull fracture, with the consequent brain injury. Both medical and lay witnesses testified at the partial trial that following the accident the minor suffered a diminution of hearing on the right side, while it was normal before the accident. Plaintiff called three medical witnesses. Dr. David V. Sharp testified that the hearing tests were inconclusive, that the eardrums were quite normal, and that there was no evidence of positive neurological findings. Dr. Lawrence F. Richdorf testified that he found the hearing in the right ear slightly below normal and that no further medical treatment other than routine checkups would be required of the minor. Dr. Harold F. Buchstein found no abnormality of the ears. He did not test the minor's hearing, but he testified that, if there were any diminution in the minor's hearing then, he assumed it would be permanent.

Dr. R. E. Hultkrans and Dr. Hewitt B. Hannah were called by the defense. Dr. Hultkrans testified that he found no positive physical or neurological symptoms and that he found all cranial nerves to be normal although he made no special hearing tests. He testified that the minor could hear a normal conversational voice. Dr. Hannah testified that the eardrums were normal and that the eighth cranial nerve was not impaired. He found a difference in the bone and air conduction between the right ear and the left ear, but he said that such difference was normal and probably was caused by a low-grade infection.

An affidavit of Dr. Joe R. Brown indicates that he examined the minor in October 1947 and found no neurological abnormalities. He also found that the boy's hearing was normal. Another examination was made in August 1948 from which it was concluded that the cause of the child's general behavior disorder was psychological.

The minor was examined by Dr. Leo W. Fink, an eye, ear, and nose specialist, in May and June 1952. Dr. Fink's affidavit states that the minor had sustained a total and permanent loss of hearing in the right ear as a result of damage to the cochlea and to the eighth cranial nerve sustained in the accident of July 10, 1947. Dr. Buchstein examined the minor in August 1952, and his affidavit supports Dr. Fink's findings. Both doctors stated in their affidavits that the damage to the structure of the ear was present but unrecognized at the time of the first trial in 1948.

■ We have long recognized that a more liberal rule prevails for setting aside a release executed in settlement of a minor's claim for damages for personal injuries than in other cases. Larson v. Stowe, 228 Minn. 216, 36 N. W. (2d) 601, 8 A. L. R. (2d) 455; Clark v. Gronland, 221 Minn. 505, 23 N. W. (2d) 169; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; Elsen v. State Farmers Mut. Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652.

As is usual in personal injury cases, the doctors called by plaintiff and those called by defendant differ as to the nature and effect of the injuries. Defendant's doctors were emphatic in stating that there were no structural injuries to plaintiff's ears. Plaintiff's doctors, while admitting that there might be some impairment in plaintiff's hearing, did not attribute it to any structural damage to the ear or cranial nerves that affect hearing. Whether the testimony of defendant's doctors was favorable to him in the trial of the case because their opinions were influenced by the interests of the party who employed them or because defendant called such doctors as were apt to have the opinion he wanted we are not prepared to say. Suffice it to say here that, if we accept the opinion of defendant's doctors as to the nature of the injuries to plaintiff's ears, they must have been mistaken. If the parties and the court based the settle-

ment upon the medical testimony in the case, it is quite obvious that they were misled as to the extent of the injury to the ear. If defendant was willing to rest his case on their testimony at the time of trial, he should not now complain if the court concludes that on the basis of such testimony the parties and the court were mistaken as to the true nature of the injuries suffered. On the basis of the rules stated in the above cases, there was no abuse of discretion in setting aside the court's approval of the settlement.

■ Defendant contends that plaintiff should be compelled to tender back the money he received in settlement. We have held that it is not always necessary to make such tender. Clark v. Gronland, 221 Minn. 505, 23 N. W. (2d) 169; Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119. Where, as here, the money or a part of it is in the custody of the court, substantial justice can be accomplished by permitting it to remain as it is until the case has been tried. If plaintiff prevails, the court should apply the amount of such settlement upon the verdict without in any way disclosing to the jury that a settlement has been made. The jury should not be told that the case has previously been settled, nor should any reference be made thereto in the trial of the case. The share of the settlement received by plaintiff's prior attorney should likewise be repaid. The attorney, being an officer of the court and amenable to its orders, should now be required to pay such share of the settlement either into court or to defendant. In support of the application to set aside this settlement, plaintiff's original attorney has signed an affidavit setting forth that there was a mistake as to the extent of plaintiff's injuries. Where the attorney who effected the settlement takes an active part in undoing his work, he should in good conscience return what he received for bringing about the settlement. If defendant prevails in said action, the entire amount of such settlement should be repaid to him. In setting aside a settlement of this kind, defendant should be placed in the position he was, as near as that can be done. If a tender back is not made, the court should safeguard the rights of defendant, as far as that can be done, to the end that

when the case is finally disposed of his rights, as well as plaintiff's, will have been equitably protected.

■ Defendant also contends that, under Rule 60.02 of the Rules of Civil Procedure, relief from the order of the court approving this settlement cannot be granted for the reason that the application for such relief was not made within one year after the order was made. This question was not presented to the trial court. It cannot be raised here for the first time.

The order appealed from is affirmed.

Affirmed.

