## JOHN SIMONS v. SCHIEK'S, INC.

145 N. W. (2d) 548.

October 7, 1966—No. 39,957.

*Van Valkenburg, Moss, McEachron & Flaherty,* for appellant.
*Stewart R. Perry* and *Walter E. Riordan,* for respondent.

Frank T. Gallagher, C.

Appeal from an order and an amended order of the district court granting plaintiff's motion to vacate and set aside a judgment.

Plaintiff adopts defendant's statement of facts, subject to expansions where he deems necessary. On December 22, 1958,[1] plaintiff, John

---

[1] The complaint alleges, and the answer admits, that the accident occurred in 1959; however, the affidavits of plaintiff and his doctor recite that the accident actually occurred in 1958, which both counsel on the appeal have agreed is correct.

Simons, an employee of Clyde Snyder Productions, fell down a stairway and sustained injuries while on the premises of the defendant, Schiek's, Inc. The next day he visited Dr. Lester W. Carlander and was treated, among other things, for a fractured arm and rib, but no X rays were taken of his visibly bruised left hip. Even though the hip was black and blue, plaintiff claims he felt no pain in it at that time. On November 19, 1959, 11 months later, plaintiff's doctor discharged him from further consultation pertaining to his injuries.

On April 18, 1960, plaintiff commenced this action, seeking damages in the amount of $25,000, alleging that he was a business invitee upon defendant's premises and that as a result of his fall he was permanently injured and would in the future be disabled, endure pain and suffering, and expend money for medical care and treatment. Defendant denied negligence, raising the defenses of contributory negligence and assumption of risk by plaintiff and pleading the Workmen's Compensation Act.

On April 2, 1962, the parties agreed upon a settlement of the case for $1,850. A stipulation of dismissal was executed by attorneys for the parties and the trial court ordered judgment of dismissal with prejudice. Judgment was entered on that date. According to plaintiff's affidavit, up until this time he had never experienced any difficulty with his hip. Shortly after the settlement was reached, he first experienced pain in his left hip. Although this pain bothered him for several days, he thought it was due to a strain from his dancing as an entertainer and did not seek medical aid. His hip did not bother him again to any extent until the spring of 1963, when on May 9, 1963, some 13 months after the settlement, he again consulted Dr. Carlander. Subsequently plaintiff went to the Mayo Clinic in Rochester, where he underwent surgery resulting in medical expenses exceeding $1,800. He also claims loss of 6 months' income, impairment of future earning capacity, and severe pain and suffering. He avers that the settlement was entered into without any knowledge on his part relative to the development of the necrotic condition of his hip and that this condition and the disability and expenses arising therefrom were not in any way anticipated or contemplated at the time the suit was settled. Plaintiff claims that had he been aware of the condition of his hip he would not have authorized settlement for $1,850.

Dr. Carlander stated in an affidavit that he first treated plaintiff on December 23, 1958, at which time plaintiff complained of acute pain and incapacity in his left shoulder. An examination revealed a swelling and soreness to the shoulder, and X rays showed a fracture of the cervical neck of the left humerus and a fracture of the ninth rib posteriorly on the left side. Following treatment of these fractures, plaintiff was seen for a final evaluation of those injuries on November 19, 1959.

Dr. Carlander next saw plaintiff on May 9, 1963, at which time he complained of a gradual development of a catching and soreness in his left hip, which started to cause him concern about 2 weeks earlier. An examination showed plaintiff had full-range motion of the hip and no spasm, but there was a mild tenderness in the trochanteric area just posterior to the trochanter. X rays were taken and no definite pathology was recognized.

On July 17, 1963, plaintiff was again checked by Dr. Carlander and complained that the pain bothered him more. According to the doctor's affidavit, plaintiff said that it "bothered him to raise the leg upward and with twisting motions of the hip" and that "he occasionally noticed some snapping in the hip out in the lateral border." An examination elicited the presence of pain when plaintiff tried to actively flex the hip, and rotation of the hip caused discomfort in the groin area. X rays were repeated and showed a definite avascular necrosis developing in the femoral head. It was the doctor's opinion, based upon reasonable certainty, that—

"* * * there is a probable contributing causal connection between the fall suffered by John Simons [plaintiff] in December of 1958 and the subsequent development of avascular necrosis in the left femoral head."

Following this examination, plaintiff was referred to the Mayo Clinic, where he was seen by Dr. Paul R. Lipscomb on October 3, 1963. He had surgery on his left hip on October 14, 1963, and was immobilized until December 9, 1963, in a plaster-of-paris cast which extended from the thoracic cage to the ankle on his left leg and to the knee on his right leg. He was hospitalized the last time from December 8 to 12, 1963, and was on crutches until June 1964. Plaintiff said that his salary since October 1963 had been reduced from $205 to $50 a week and that he had been

unable to work as an entertainer since October 1963 with the exception of a 3-week trial period.

The matter came before the District Court of Hennepin County on January 22, 1965, upon plaintiff's motion for an order setting aside and vacating the judgment of April 2, 1962. The court, after hearing and considering oral arguments and memoranda of counsel and upon the files and records, ordered on April 27, 1962, that the judgment be vacated and set aside. Two days later, on plaintiff's motion, the court amended the order to read that the judgment be vacated and the matter be reinstated on the calendar, but not tried until review of the amended order by the supreme court was completed. The court certified the questions presented by plaintiff as important and doubtful. In a memorandum attached and made a part of the April 27 order, the trial court stated:

"Rule 60.02 of the Minnesota Rules of Civil Procedure provides, in part, that the Court may relieve a party from a final judgment or order for the following reasons: '(1) Mistake * * * or (6) any other reason justifying relief from the operation of the judgment.' The rule further provides that the 'motion shall be made within a reasonable time, and for reasons (1) * * * not more than one year after the judgment * * *.'

"Clauses (1) and (6) are regarded as mutually exclusive. If all that a moving party can show is mistake discovered before the expiration of the one-year period following the judgment, and nothing more, then he cannot avoid the one-year limit on a motion under clause (1) by asserting that his motion is under clause (6)—for some 'other reason' justifying relief from the judgment. [Citation omitted.]

"But despite this principle of the mutual exclusiveness of clauses (1) and (6), courts construing the analogous Federal Rule 60(b) have resorted to the clause comparable to clause (6) as a mandate to accomplish justice and have either ignored the principle of mutual exclusiveness [citations omitted], or have had little difficulty in a particular case where there were compelling equities, in finding that something more existed than that which otherwise would have brought the case within clause (1) and in concluding that the moving party had brought himself within the broad sweep of clause (6). * * *

"The Court is of the view that in the case at bar the plaintiff should be permitted to proceed under clause (6). Here at the time of the settlement in April, 1962, the plaintiff had no difficulty with his hip, and neither party to the case at the time of entry of judgment knew of any such injury. There was a mutual mistake of fact. It was not until more than one year had elapsed from the date of the judgment that the plaintiff ascertained that he had an avascular necrosis of the hip, which was caused by the fall involved in the case. Since the plaintiff received a diagnosis at a time when it was impossible for him to comply with the one-year limitation applicable to clause (1), this additional element of impossibility of compliance is sufficient to bring the case within clause (6) and to have the timeliness of the plaintiff's motion tested solely on the basis of laches."

Defendant argues on appeal that the April 2, 1962, judgment may be vacated, if at all, only under Rule 60.02(6), Rules of Civil Procedure; that the policy of the law is to give finality to judgments; and that a judgment on the merits constitutes a final determination of the issues raised in that action and, if not appealed, is forever a bar against further litigation of the same issues between the parties. It cites 10 Dunnell, Dig. (3 ed.) § 5163, to the effect that a party is barred from relitigating an issue urged against the same party for the same reasons that he is barred under a decision on the merits from repeated suits on the same claim against the same party.

Defendant also argues that the April 2, 1962, judgment is a final judgment on the merits and is therefore res judicata and, since there is no claim that the judgment is void or was procured by fraud, it is binding and conclusive upon the parties.

It contends that since plaintiff is proceeding by motion, his motion must comply with Rule 60.02 and come within one of the six clauses of that rule. It points out that the judgment was entered April 2, 1962, and the motion to vacate was not served until August 1964. Therefore, it contends that because plaintiff's motion was made more than a year after the judgment was entered, he is not entitled to relief under clauses (1), (2), and (3) of the rule. It is defendant's further claim that since all remedies under Rule 60.02(1) are barred because of plaintiff's failure to

make a timely appeal, the issue here can be narrowed down to whether plaintiff claimed and established a right to relief under Rule 60.02(6). It claims that the sole ground for plaintiff's motion and amended motion to vacate was that the stipulation upon which judgment was based was a result of mutual mistake.

Defendant denies the existence of any kind of a mistake. It claims that plaintiff suffered a known injury to his hip which was visible shortly after the time of the accident and that the necrotic condition discovered later constituted at the time of the settlement an unknown consequence of a known injury.

Both parties cite, among other cases, Doud v. Minneapolis St. Ry. Co. 259 Minn. 341, 107 N. W. (2d) 521, and Newman v. Fjelstad, 271 Minn. 514, 137 N. W. (2d) 181. In Doud, this court said (259 Minn. 346, 107 N. W. [2d] 524):

"It is well established in this state that where parties contract for a release of all claims for known injuries, the release is a bar to recovery for unknown consequences of known injuries. Such release, however, is not a bar to recovery for unknown injuries not within the contemplation of the parties at the time the release was contracted for."

Later, in the Newman case we said (271 Minn. 519, 137 N. W. [2d] 185):

"The court indicated in the Doud case, where vacation of a settlement was affirmed, that the injury which was not discovered until after the settlement must in fact have been sustained at the time of the accident and have existed at the time of the settlement."

It appeared clear to the court in Newman v. Fjelstad, *supra,* that osteomyelitis did not actually develop until after the settlement and that there were no signs of its development until 7 years later.

In Aronovitch v. Levy, 238 Minn. 237, 56 N. W. (2d) 570, 34 A. L. R. (2d) 1306, this court stated that where the parties contracted for a release of all claims for known injuries, the release is a bar to recovery for unknown consequences of known injuries, but is not a bar to recovery for unknown injuries not within the contemplation of the parties at the time they contracted for the release. We further said that even though the re-

lease expressly covered unknown injuries, it was not a bar to an action for such unknown injuries if it can be shown that the unknown injuries were not within the contemplation of the parties when the settlement was agreed upon. We also decided that if the parties did in fact intentionally agree upon a settlement for unknown injuries, which is usually a fact question, the release would be binding.

We have considered with much interest the arguments of counsel for both parties and other authorities cited. It will serve no useful purpose to prolong this opinion with an extensive discussion of all the arguments and cases. The real issue before us is whether the trial court abused its discretion in vacating the judgment and reinstating the case on the calendar under Rule 60.02(6) for "any other reason justifying relief from the operation of the judgment." It seems reasonable to us that clause (6) was included under Rule 60.02 to permit the court to grant some justifiable relief under certain circumstances, even though the appeal time had expired under clause (1). The question then arises: Were the facts and circumstances in this case sufficient to permit the relief granted here? We think they were. We recognize that under our rules and authorities we must consider with some hesitation vacating a judgment entered, as here, almost 3 years earlier. However, we must also recognize our rules with regard to the discretionary power of a trial court in such matters. It is our opinion that the court could reasonably conclude that at the time of the settlement in April 1962 the plaintiff had no difficulty with his hip and that neither party to the case (nor their attorneys) knew of any such injury; that there was a mutual mistake of fact; that it was more than a year after judgment was entered before plaintiff discovered he had avascular necrosis of his hip; and that, based on Dr. Carlander's affidavit, there was a probable contributing causal connection between plaintiff's fall in December 1958 and the subsequent development of avascular necrosis. Under the circumstances the court could reasonably conclude that since plaintiff learned of the avascular necrosis only in July 1963, the obvious impossibility of his compliance with the 1-year requirement of clause (1) was sufficient to bring the case under clause (6).

Whether a motion under Rule 60.02(6) is made within a reasonable time depends upon all of the facts and circumstances involved. Sommers

v. Thomas, 251 Minn. 461, 88 N. W. (2d) 191. In determining whether a motion is timely, the court may consider whether any prejudice will result to the other party if the motion is granted. See, Tozer v. Charles A. Krause Mill. Co. (3 Cir.) 189 F. (2d) 242. It was the position of the court that the motion was made within a reasonable time and, as stated in its memorandum, the defendant made no claim and showed no facts suggesting that setting aside the judgment would prejudice it in any way. It is our opinion under the facts and circumstances here that the determination of the trial court should be affirmed.

Affirmed.

OTIS, JUSTICE (dissenting).

I cannot agree that under this record it was proper for the court to set aside the settlement and dismissal of this matter under Rule 60.02(6). All of our prior decisions make it clear that the application of clause (6) is reserved for exceptional situations where the equities weigh heavily in favor of the petitioner and clearly require that relief be granted to avoid an unconscionable result. This is not such a case.

The law favors good-faith settlements.[1] They are presumed to be valid. Litigants who seek to avoid them have a heavy burden of persuasion.[2] To permit them to be vacated except for the most compelling reason creates "uncertainty, chaos, and confusion" with respect to future dispositions,[3] and is a disservice to other litigants whose matters are thereby delayed.[4]

Most of the cases which have granted relief after the year prescribed in Rule 60.02(1) has elapsed resulted from settlements involving minors.[5]

---

[1] Jallen v. Agre, 264 Minn. 369, 373, 119 N. W. (2d) 739, 742.

[2] Schoenfeld v. Buker, 262 Minn. 122, 133, 114 N. W. (2d) 560, 568; Eggleston v. Keller Drug Co. 265 Minn. 78, 81, 120 N. W. (2d) 305, 307.

[3] Rogalla v. Rubbelke, 261 Minn. 381, 384, 112 N. W. (2d) 581, 583.

[4] Eggleston v. Keller Drug Co. 265 Minn. 78, 82, 120 N. W. (2d) 305, 308.

[5] Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; Clark v. Gronland, 221 Minn. 505, 23 N. W. (2d) 169; Doud v. Minneapolis St. Ry. Co. 259 Minn. 341, 107 N. W. (2d) 521; Spaulding v. Zimmerman, 263 Minn. 346, 116 N. W. (2d) 704.

Characteristically they have appealed "strongly to the conscience of the court" because they were handled without the assistance of counsel,[6] or, as sometimes happens, prolonged disability and economic compulsion have led to a hasty and improvident settlement. Even then we have stressed the need for caution in vacating such judgments. But where children are involved the court has frankly acknowledged the adoption of a more liberal rule which recognizes that they are "not possessed of unlimited contractual competence" in their own right.[7]

With these principles in mind, I respectfully submit that the plaintiff, who is an adult, has at best made out a case of mutual mistake or excusable neglect under Rule 60.02(1). There is nothing harsh or unusual in his circumstances which requires the court to grant the extraordinary relief contemplated by Rule 60.02(6). The equities are, in my opinion, the other way. This plaintiff's fall occurred in December 1958, nearly 8 years ago, a fact which now burdens defendant with the difficult problem of determining exactly what injury plaintiff originally suffered and its progress and causal relation to his present condition. He received prompt medical attention for numerous injuries, among others being extensive bruises on his entire left side. Although they were obvious in the area of his hip, no X rays were taken in that region. I respectfully suggest there is no evidence to support a finding that it was impossible to discover plaintiff's necrotic condition within a year of the time the settlement was made in April 1962. Although plaintiff shortly thereafter experienced pain in his left hip, he did not again consult a doctor until May 9, 1963, nor had he done so after November 1959, a period of 3½ years. He settled without a medical examination; he failed to inquire into his condition for more than a year after recognizing unusual symptoms; and allowed over a year more to elapse before moving to vacate. It is clear that part of the delay was due to plaintiff's failure to advise his own lawyer of the prior settlement, and to his difficulty in finding medical evidence to relate the ac-

---

[6] Elsen v. State Farmers Mutual Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652.

[7] Larson v. Stowe, 228 Minn. 216, 220, 36 N. W. (2d) 601, 603, 8 A. L. R. (2d) 455; McGovern v. Lutz, 242 Minn. 397, 402, 65 N. W. (2d) 637, 640.

cident to his necrotic condition, a fact mentioned both by his doctor and the trial court. It is also noteworthy that the Mayo Clinic who performed extensive surgery on plaintiff is significantly silent on the subject of causal relation.

In my opinion, therefore, the case is governed squarely by our recent decisions in Schoenfeld v. Buker, 262 Minn. 122, 114 N. W. (2d) 560,[8] and Newman v. Fjelstad, 271 Minn. 514, 137 N. W. (2d) 181. In Newman the plaintiff sought to set aside a release because of the development of osteomyelitis some years thereafter, claiming this to be a separate and distinct injury not known or considered by the court and the parties at the time of settlement. In reversing an order which vacated the release we reiterated the rule that a release cannot be set aside on the ground that known injuries resulted in consequences not known and not expected when it was made and that the parties are presumed to have intended to settle all claims growing out of the injuries whether the aftereffects proved to be more or less serious than anticipated. We then quoted with approval the following (271 Minn. 519, 137 N. W. [2d] 184):

"This was not an unknown injury, but an unknown and unexpected consequence of the injury, and does not bring the case within the rule. To avoid such a release, the rule requires clear and convincing proof that a substantial injury, which was not discovered until after the settlement, had in fact been sustained in the accident and existed at the time of the settlement. *That unknown and unexpected consequences resulted from known injuries is not sufficient.*"

As I view the instant case the issue of whether or not the necrotic condition could be diagnosed within a year of settlement is not decisive. If it existed and could be detected during that period (and there is no showing it could not), plaintiff is barred for not having acted within the time pre-

---

[8] In Schoenfeld we said (262 Minn. 132, 114 N. W. [2d] 567): "Consequences which will follow in the future from known injuries depend upon so many unknown conditions and contingencies and will vary to such an extent in different individuals that they cannot be known with any degree of certainty. Mistakes which might occur in forecasting such consequences are mistakes of opinion, not of fact, and therefore furnish no sufficient ground for annulling the release."

scribed by Rule 60.02(1). On the other hand if it was an unknown and unexpected consequence of a known injury, as in the case of osteomyelitis, then there is no evidence, let alone "clear and convincing proof," that plaintiff initially suffered a substantial injury unrelated to that for which he settled. In either case under our decisions, I submit that plaintiff is not entitled to relief.

MR. CHIEF JUSTICE KNUTSON took no part in the consideration or decision of this case.