Robert FASSBINDER, Respondent,

v.

MINNEAPOLIS FIRE DEPARTMENT
RELIEF ASSOCIATION,
etc., Appellant.

No. 46328.

Supreme Court of Minnesota.

May 13, 1977.

Harvey E. Skaar and Stanley P. Jacobson, Minneapolis, for appellant.

James Malcolm Williams and John R. Graham, Minneapolis, for respondent.

Heard before KELLY, TODD and MacLAUGHLIN, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant appeals from an order of the Hennepin County District Court denying a new trial and from a judgment ordering it to pay plaintiff a pension for a period of 5 years and to reconstitute its board of trustees in order to reconsider plaintiff's application for a disability pension. We affirm in part and reverse in part.

Plaintiff joined the Minneapolis Fire Department as a firefighter in March 1960. He applied for and was admitted to membership in defendant Minneapolis Fire Department Relief Association (MFDRA). The MFDRA is a corporation formed pursuant to Minn.St. 69.25 to 69.53. It is organized and run by firemen. Membership in the organization is mandatory, although the Association may exclude applicants who are poor health risks. Minn.St. 69.055, subd. 3, 69.29. The affairs of the MFDRA are managed by its board of trustees, composed of seven members of the Association and the city attorney, ex officio. Contributions to the MFDRA were regularly deducted from plaintiff's salary, entitling him to the various benefits—sick, death, funeral, pension— provided by the Association.

On April 25, 1969, plaintiff was suspended from duty because a woman occupied the captain's bed in the fire station with him.[1] He returned to perform light duties from June 11 to June 27. The Civil Service Commission of Minneapolis discharged plaintiff from the fire department on June 27, 1969, on the ground of disgraceful conduct, and its action was affirmed on plaintiff's appeal to district court in November 1969.

On July 24, 1969, plaintiff filed with the MFDRA an application for a disability pension, maintaining that alcoholism had disabled him from satisfactorily performing his duties and had caused the incident that brought about his discharge.[2] At its regu-

1. Plaintiff was acting captain that day. The incident originated when he was off duty; he reported it to his superior after his shift began and was suspended.

2. Plaintiff's theory of his disability relied on repeated instances of stress disorientation that

undermined his confidence and led him to drink, a condition that worsened after a near fatal auto accident in 1965 which caused him to question his physical ability. Plaintiff explains the absence of evidence of his condition in fire department records because of friends who covered up for him, although he often reported

lar monthly meeting on July 28, 1969, the MFDRA's board of trustees determined that plaintiff was not entitled to a disability pension. This determination was made without referring plaintiff to the Association physician for a medical examination and without entering the decision in the minutes of the meeting.[3] Plaintiff appeared with his attorney at this meeting but it was not a hearing on his application. He was not informed of the board's decision, other than by not receiving benefits.

In October 1972, plaintiff initiated the instant action demanding a refund of his contributions to the MFDRA, or, in the alternative, a hearing on his application and the award of a disability pension. Plaintiff was referred to the MFDRA's physician, Dr. Frank J. Ankner, on October 31, 1974. It was Dr. Ankner's opinion that plaintiff was not presently disabled nor was he unable to perform the duties of a firefighter at the time of his discharge. The board of trustees then held a hearing on January 17, 1975, with respect to plaintiff's eligibility for a disability pension. Counsel and three witnesses appeared on plaintiff's behalf. On February 10, 1975, the board issued detailed findings, acknowledging that plaintiff had a drinking problem but determining that it did not interfere with his duties, and, therefore, denied plaintiff's application. The board did not consider plaintiff's fire department efficiency records nor did it consider alcoholism as the cause of plaintiff's misconduct. Pursuant to article VII, § 9 of the bylaws of the MFDRA, plaintiff filed written objections to the board's denial.

Plaintiff's action was heard in district court beginning February 24, 1975. The trial court found that the board's failure to refer plaintiff to its physician and enter its determination in the minutes breached plaintiff's membership agreement, and that the board failed to consider all available evidence at the hearing in February 1975, and that its decision to deny plaintiff's application was arbitrary, capricious, and oppressive. It further found that plaintiff could not receive a fair hearing before the board of trustees as it was then constituted. It ordered the MFDRA to pay plaintiff a disability pension for the period from the time of his application to the board's denial of it in February, and remanded plaintiff's application to the Association with instructions to reconvene and appoint a panel of MFDRA members other than those who participated in prior considerations of the application.

This appeal presents four issues:

(1) Was plaintiff's application timely?

(2) Did the board of trustees act within its discretion in 1969 in considering plaintiff's application?

(3) Did the district court properly award plaintiff a disability pension absent a finding of disability?

(4) Was the district court's order to reconstitute the board of trustees for consideration of plaintiff's application justified?

■ 1. Defendant argues initially that plaintiff's application for a disability pension was not presented within the 30-day period prescribed by Minn.St. 69.43. That statute provides in part: "No allowances for such disabilities shall be made unless notice of the disability and application for benefits on account thereof shall be made by, or on behalf of, the disabled member to the secretary of the association within 30 days after the beginning of the disability." Plaintiff first gave notice with his applica-

---

to work in an inebriated state. He was suspended twice for brief periods after 1965 for failure to report to work and to inform the fire department of his whereabouts. Moreover, in 1968 his superiors suggested he enter a detoxification program; he then spent three weeks at Pioneer House.

**3.** The relevant portions of the minutes of the July 28 meeting read as follows: "Motion

adopted removing Robert T. Fassbinder from membership effective June 27, 1969, due to his discharge from the Minneapolis Fire Department that date.

"Communication dated July 24, 1969, from Attorney James Malcolm Williams, on behalf of Robert T. Fassbinder, for disability pension or refund of dues, placed on file."

tion on July 24, 1969, some 90 days after his suspension. Defendant did not raise this issue below,[4] however, and we need not consider it on this appeal. E. g., *McGovern v. Lutz,* 242 Minn. 397, 65 N.W.2d 637 (1954).

2. Defendant next challenges the district court's conclusions that the board of trustees acted improperly in 1969 in denying plaintiff's application for a disability pension. In *Stevens v. Minneapolis Fire Dept. Relief Assn.,* 124 Minn. 381, 145 N.W. 35 (1914), this court established that the relationship between a member and the MFDRA is contractual in nature, that members contribute part of their salaries and in turn are insured for death and disability. See, *Sandell v. St. Paul Police Re-lief Assn.,* Minn., 236 N.W.2d 170, 173 (1975); 3 McQuillin, Municipal Corporations (3 ed.) § 12.172. The contract between the parties consists of relevant statutes and the articles and bylaws of the MFDRA. Consistently with the principles above, the district court found that the board failed to follow in plaintiff's case the procedure set forth in the Association's articles and bylaws,[5] which require the board to refer plaintiff to the Association physician for a medical examination and to enter in the minutes their denial of plaintiff's application, and thereby breached plaintiff's membership agreement.

Defendant argues that the board was justified in not referring plaintiff to the Association physician because the referral is pri-

---

**4.** Indeed, at the hearing in January 1975, defendant acknowledged that the application was timely.

**5.** Several provisions of the MFDRA's articles and bylaws are pertinent to an application for a disability pension. Article II of the articles of incorporation provides with respect to pensions: "Whenever any active member of the Association shall, by reason of sickness or accident, become disabled from performing his duties, he shall from the time of his retirement from the fire department be entitled to receive from the Association during such disability the pension hereinafter stated * * *.

\* \* \* \* \* \*

"The members of each class shall receive a monthly pension in such sum as the By-Laws shall prescribe for pensioners belonging to that class, provided, however, that each applicant shall first comply with the following conditions: all applications for a pension on account of injuries or disability shall be made within sixty days after such applicant has ceased to be an active member of the fire department; he shall make a written application to the Board of Trustees, stating the nature and cause of such disability, such statement to be made under oath; *the application to be laid over for one month until the applicant has been examined by the Association surgeon who will submit a written opinion concerning the nature and degree of said applicant's disability and its probable duration or permanence,* which statement shall be attested under oath by said surgeon. The Board shall, if it considers the applicant disabled (*and upon the question of disability the decision of the Board shall be final and conclusive*), place his name on the pension roll in the class to which his disability entitles him but no pension shall be *granted* without a majority of the Board so electing by a yea and nay vote, *which shall be part of the minutes of said meeting * * *.*" (Italics supplied.)

Article I, § 5, of the bylaws provides: "When any active member of the Association ceases for any cause to be a member of the Fire Department, his name shall be stricken from the list of active members of this Association. *And unless his retirement is caused by disability of such character as shall entitle him to a pension under the Articles of Incorporation and By-Laws * * *, such retiring member shall thereafter not be entitled to any pecuniary benefit or aid from his membership herein.*" (Italics supplied.)

Article VII, § 9 of the bylaws is akin to article II of the articles quoted above: "All applications for pensions * * * shall be accompanied by the affidavit of the applicant, stating the cause and nature of such disability, and the length of time such disability has existed, and the amount of relief he has drawn from the Association for such disability. *Such application shall not be acted upon until after the applicant has been examined by the relief surgeon and a report received from such surgeon.* After the report of such surgeon has been received, the Board of Trustees shall, if it considers the applicant disabled, place his name on the pension rolls or may order the applicant to appear before the Board for examination and a hearing on his petition at a time and place to be fixed by the Board; * * *. Should such applicant or pensioner feel himself aggrieved by any action of the Board, he shall within sixty (60) days from notice of such action of the Board, file written objections and the reasons thereof with the Board and said Board may order said applicant to further appear before said Board for further examination." (Italics supplied.)

marily for the benefit of the board, a requirement that the board should be able to waive in disposing of "insubstantial" claims. In support of its position, defendant cites *Police Pension & Relief Bd. of Denver v. Goldman*, 486 P.2d 469 (Colo.App.1971). There, plaintiff, a police surgeon, sought sick leave benefits because of injuries to his back. After taking testimony and receiving medical reports, the relief board denied his application. The district court reversed, citing as one ground the failure of the relief board to require an investigating committee to investigate plaintiff's claim as mandated by the Denver city charter. A court of appeals reversed the district court, conceding that the relief board had not followed proper procedure, and stated:

> "We conclude that the investigating committee is an arm of the Board and that the Board had jurisdiction to hear evidence and make determination as to plaintiff's physical condition without a prior report of the investigating committee, and that the finding of the Board, *if supported by competent evidence,* was binding upon plaintiff." 486 P.2d 472. (Italics supplied.)

The *Goldman* case is readily distinguishable from the instant appeal, for there is no indication here that the board's determination was supported by competent evidence. Indeed, the board considered no medical evidence in denying the disability pension. Moreover, we think it unwise to sanction board discretion to forego a medical examination in evaluating disability applications it perceives as insubstantial. Such a practice would contribute to arbitrariness in the board's decision.

> " * * * From what has been said in reference to the rights acquired by members of the fire department, it follows that *they have certain vested rights in and to the relief which the association may not arbitrarily destroy.* While it is true that the articles of association and the by-laws provide that the determination by the association of questions of disability and injury is final and conclusive, those provisions must be construed in the light of the legal rights of the

parties, and in harmony with the fundamental doctrine that no person can be deprived of his property or property rights except by due process of law; and this means notice and opportunity to be heard." *Stevens v. Minneapolis Fire Dept. Relief Assn.,* 124 Minn. 381, 384, 145 N.W. 35, 36 (1914). (Italics supplied.)

The requirement of a medical examination benefits not only the board, it also assures the applicant that his claim will be adequately considered.

Defendant also asserts with respect to the medical examination that even if the board assumed that plaintiff was an alcoholic, there was no evidence that plaintiff's condition prevented him from performing his duties as a firefighter and hence a medical report was unnecessary to the board's decision. This argument, however, begs the question at hand, for the medical report itself might have indicated that plaintiff was disabled. Therefore, the trial court properly found that the board breached its contract in failing to have plaintiff examined by its physician.

The defendant is correct, however, in asserting that no provision of the articles or bylaws required the board to enter its negative evaluation of plaintiff's claim in the minutes of the July meeting. See, Articles of Incorporation, Article II (quoted in footnote 5, *supra* ). Thus, the court erred in finding this a breach on the part of the board. Nevertheless, we do not express approval of the board's failure to notify plaintiff of its decision.

■ 3. Having determined that the board did not fulfill its obligations in considering plaintiff's application, the district court awarded plaintiff a disability pension from the date of his application, July 24, 1969, until the board formally denied it in February 1975. The court did not hear evidence or make a finding on plaintiff's disability.

Defendant argues at length that the board of trustees is the duly authorized determiner of disability under the articles and bylaws and that judicial review of a

pension application decision by the board must be in the limited scope of certiorari. Such a schema compels the conclusion, defendant asserts, that the district court could not award plaintiff a pension for the 5-year period without a finding, either by the board or the court, that plaintiff was disabled. Since no such finding was made, the district court was without authority to award the pension and by doing so erroneously treated a want in procedure as an affirmative finding in plaintiff's favor. See, *State ex rel. Wright v. Morrison,* 80 Ohio App. 135, 145, 75 N.E.2d 106, 111 (1947). Although analogizing the board to an administrative agency seems apt and defendant's argument seems otherwise sound, it fails to reach the justifications on which the court relied.

The district court's memorandum [6] suggests two justifications for its award of the pension. First, the court apparently found as part of the membership agreement that the board must either grant a pension or deny it in accordance with the procedure established in the articles and bylaws. By failing to follow prescribed procedure in denying plaintiff's application, the board thereby impliedly granted the pension until

such time as the procedure was followed. The difficulty with this interpretation is that the articles and bylaws do not prescribe this alternative, see footnote 5, *supra,* and there appears to be no basis in the circumstances to construe them in this manner.

The second justification is more persuasive. The district court suggested that the board's failure to refer plaintiff to the Association physician irreparably damaged his claim to a pension, a failure that "cannot be remedied by defendant Association by a subsequent medical examination taken five years after the time in question." Since the board left "plaintiff without recourse for the period of time in which the Board took no proper action," the board has prevented plaintiff from proving the damages he suffered because of its breach of contract, i. e., that he was disabled and deserving of a pension during that period. In such circumstances, the award of the pension to compensate plaintiff for defendant's breach might be justified.

Defendant counters this justification in two respects. First, it argues that the court simply assumed the 5-year delay in

---

**6.** The memorandum reads in part: " * * * While the decision of the Board of Trustees upon the question of disability is final and conclusive, the Board, in making this decision cannot have acted in an arbitrary, capricious or oppressive manner, nor can it have acted contrary to its obligations under the membership agreement. * * * The Board * * * did *not abide by its obligations * . * *. Instead,* only four days after plaintiff made application for disability pension, [the Board] decided, without benefit of a hearing or the required medical examination, that plaintiff was not entitled to a disability pension. From the date of discharge in 1969, until October of 1974, the Board took no other action. This court is of the opinion that the Board cannot fairly and intelligently, without being arbitrary and capricious, make a determination as to disability without the required medical examination by its surgeon informing it of the status of the alleged condition. This court finds that defendant Association breached its membership agreement with plaintiff by not abiding by its obligations to either grant plaintiff a disability pension or, alternatively, to deny plaintiff a disability pension *by following the procedure set forth in the Articles and By-Laws.* Defend-

ant Association's failure to follow either alternative provided for under the agreement resulted in an arbitrary and capricious decision on its part in July of 1969, denying plaintiff's application for benefits, leaving plaintiff without recourse for the period of time in which the Board took no proper action. The failure to examine plaintiff within a reasonable time after the filing of his application for disability pension cannot be remedied by defendant Association by a subsequent medical examination taken five years after the time in question. The purpose of the referral for medical examination within one month of application is to enable the Board to make an informed and intelligent decision as to an applicant's claim of disability based upon an accurate and current medical opinion of the mental and physical condition of the applicant at the time of his application. Defendant's failure to proceed according to the alternative to granting a disability pension prescribed in the Articles and By-Laws implies that the pension will be granted. Plaintiff, therefore, is entitled to receive the proper class *pension for the period of time from the date [of* his application until] the Board's decision was finally issued on February 10, 1975."

examining plaintiff irreparably harmed his claim and speculates that one theory of alcoholism maintains that it is a largely irreversible disease and that plaintiff thus might not have been prejudiced at all by the delay. Dr. Ankner's finding that plaintiff was not disabled 5 years before might lend some support to this contention.[7] We find this argument unpersuasive, however, in light of the fact that the defendant's own articles and bylaws recognize the value of an immediate medical examination. Defendant has failed to demonstrate that alcoholism should constitute an exception to this requirement.

Second, defendant argues that plaintiff was not left without recourse by the board's decision, that plaintiff could have requested a rehearing before the board,[8] or sought judicial relief through mandamus or certiorari and compelled the board to follow its procedures. Plaintiff failed to make a demand on the board after the July meeting until he filed his complaint in this action some 3 years later. The reasons for this lengthy delay are not clear from the record,[9] perhaps because defendant made no issue of timeliness.[10] Defendant seems to characterize the delay in hard contract terms as a failure on plaintiff's part to mitigate his damages, cf. *Frank v. Jansen*, 303 Minn. 86, 96, 226 N.W.2d 739, 746 (1975), and suggests therefore that plaintiff should not be entitled to the entire 5-year pension. But since the board might have requested plaintiff to submit to a medical examination at any time after initially denying his application, there is less reason to

reduce plaintiff's recovery if he failed to make reasonable efforts to compel the board to follow its own procedures. Moreover, plaintiff might reasonably have assumed that seeking further board action would have been futile in light of the summary disposition of his application in July 1969. We do not condone an applicant's hesitance in seeking district court review of a denial of pension benefits by the board, for there is a danger of purposeful delay on the part of the applicant to accrue unwarranted benefits. In the circumstances of this case, however, we do not find the district court's award of a disability pension from July 24, 1969, to February 10, 1975, to have been clearly erroneous.

4. Defendant does not appeal from the order of the district court remanding plaintiff's application to the board for a rehearing. It does object, however, to the court's order requiring that a new board be constituted to hear plaintiff's claim. The district court found "[t]hat plaintiff could not receive a fair hearing before the members of the Board of Trustees who were present at the prior hearing and who participated in the decision of February 10, 1975." The court arrived at this conclusion "from the testimony before this court," but did not elaborate the reasons for its conclusion.

Plaintiff elicited testimony at the hearing below evidencing that the board members had prejudged his application. He endeavored to show that he was regarded in the fire department as a mustache-sprouting Communist working for minority rights, and that Fire Chief Kenneth Hall, an ex-of-

---

7. Plaintiff objected that the affidavit of Dr. Ankner, the only medical evidence supporting denial of the pension, did not indicate the basis of his opinion, and since plaintiff was not given an opportunity to cross-examine the doctor, plaintiff was prevented from effectively meeting this evidence.

8. Since plaintiff did not receive notice of the board's denial of his claim, the 60-day limitation period within which one must file objections for a rehearing before the board (Bylaws, Article VII, § 9 quoted in footnote 5, *supra*) would not apply to a motion on his part for rehearing.

9. Plaintiff endeavored to prove that members of the board informed him in 1969 that they would refrain from making a decision on plaintiff's pension application until the district court evaluated plaintiff's appeal from the Civil Service Commission decision discharging him. Since that appeal was resolved in November 1969, such evidence would not excuse a delay of several years.

10. Laches, a defense not raised, would have been applicable only if plaintiff's inaction constituted relinquishment or abandonment of his rights. *Ryan v. Minneapolis Police Relief Assn.*, 251 Minn. 250, 88 N.W.2d 17 (1958).

ficio member of the board who did not participate in the consideration of plaintiff's application, had told the board that plaintiff was not to receive a pension. Plaintiff was unable to garner such testimony from the two board members who testified. The president of the MFDRA did admit that one fire chief had placed an antagonistic remark in plaintiff's file. And there was evidence from which the district court could reasonably have concluded that the board had prejudged plaintiff's application.[11] Plaintiff argues that it would be futile therefore to remand his application to the board for a hearing unless the board is reconstituted.

■ In several cases we have had occasion to discuss the effect of bias on a tribunal. In *Payne v. Lee,* 222 Minn. 269, 24 N.W.2d 259 (1946), the court held that due process required that a judge be free from bias to be competent to hear a case. And in *Wiedemann v. Wiedemann,* 228 Minn. 174, 36 N.W.2d 810 (1949), we stated that even if a judge was free from bias in fact, the bona fide appearance of bias to the litigants would require that another judge hear the case. The impartiality required of a judge is not necessarily to be required of the board of trustees of the MFDRA, a private corporation, even though it acts in a quasi-judicial capacity in passing on applicants' claims. The appearance of bias is likely present in every determination of the board because firemen are passing on the applications of their colleagues. Somewhat more relevant is *Nodes v. City of Hastings,* 284 Minn. 552, 554, 170 N.W.2d 92, 94 (1969). There, the Hastings Civil Service Commission had discharged a police officer for fi-

nancial irresponsibility. One of the three commissioners who adjudicated the discharge had been denied recovery of a debt owed by the officer because of bankruptcy proceedings. We stated:

" * * * It should be noted that the decision of the three-man board was unanimous. While it would have been better practice for the creditor to have disqualified himself in this proceeding, we do not believe that his failure to do so prejudiced plaintiff or altered the result. In any event, the record does not indicate error in the admission or exclusion of evidence nor is there any indication that the commission conducted itself in a manner which was likely to intimidate plaintiff as a witness or prevent him from giving testimony as to what he believed to be the facts." 284 Minn. 555, 170 N.W.2d 94.

See, also, *Reyburn v. Minnesota State Board of Optometry,* 247 Minn. 520, 527, 78 N.W.2d 351, 357 (1956).

■ Reconstitution of the board of trustees, as ordered by the district court, is a drastic remedy which we do not find to be compelled as a matter of law in the circumstances. A remand to the board with an order to consider all available evidence would suffice to cure that defect of the January 1975 hearing. Plaintiff has demonstrated that the board prejudged his application, but no personal animus on the part of the board members toward him has been shown. Moreover, there is but one board of trustees and no statutory or corporate authority has been advanced authorizing replacement of board members charged with bias.[12] In these circumstances, plain-

---

11. E. g., in plaintiff's examination of the president of the MFDRA, the following testimony was produced:

"Q. And it is true, is it not, sir, that it didn't make any difference what Mr. Fassbinder brought before the Board of Trustees, you had decided before he ever made a petition that he wasn't going to get a pension?

"A. Based on the evidence that we observed, that is true."

12. In instances where sufficient bias is adduced to require that a tribunal or some of its members be disqualified, the "rule of necessity" is

sometimes applied to permit the tribunal to hear the claim. That rule is applied in the "[m]any cases [that] recognize a clear reason for disqualification but nevertheless hold * * that the tribunal should act," 2 Davis, Administrative Law, § 12.04, p. 162, because there is no other body to hear the claim. See, generally, Annotation, 39 A.L.R. 1476. This court has applied the doctrine in the past in dealing with charges of judicial bias. See, *Peterson v. Knutson,* 305 Minn. 53, 59, 233 N.W.2d 716, 720 (1975); *State ex rel. Gardner v. Holm,* 241 Minn. 125, 62 N.W.2d 52 (1954). However,

tiff has failed to show sufficient bias to justify the district court's order. Cf. *Board of Medical Examiners v. Steward,* 203 Md. 574, 102 A.2d 248 (1954). See, also, *State ex rel. Richey v. Neenah Police & Fire Commn.,* 48 Wis.2d 575, 583, 180 N.W.2d 743, 748 (1970). In the interests of justice, defendant might consider selecting a new panel to evaluate plaintiff's application, but this result is not compelled by law.

Affirmed in part and reversed in part.

"[t]he rule of necessity is held inapplicable when a way can be found to provide a qualified tribunal, as by excluding from the tribunal the disqualified members, by appointing a tribunal with a different membership, by counting only the votes of the members who are qualified, or by resort to another tribunal already available." 2 Davis, Administrative Law, § 12.04, p. 163. None of these avenues is present here.