DAVID SPAULDING v. JOHN ZIMMERMAN AND OTHERS.

116 N. W. (2d) 704.

August 3, 1962—Nos. 38,526, 38,529.

*Rosengren, Rufer, Blatti & Hefte* and *Richard L. Pemberton,* for appellants Ledermann.

*Field, Arvesen & Donoho,* for appellant Zimmerman.

*Cummins, Cummins & Gislason* and *David W. Nord,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from an order of the District Court of Douglas County vacating and setting aside a prior order of such court dated May 8, 1957,

approving a settlement made on behalf of David Spaulding on March 5, 1957, at which time he was a minor of the age of 20 years; and in connection therewith, vacating and setting aside releases executed by him and his parents, a stipulation of dismissal, an order for dismissal with prejudice, and a judgment entered pursuant thereto.

The prior action was brought against defendants by Theodore Spaulding, as father and natural guardian of David Spaulding, for injuries sustained by David in an automobile accident, arising out of a collision which occurred August 24, 1956, between an automobile driven by John Zimmerman, in which David was a passenger, and one owned by John Ledermann and driven by Florian Ledermann.

On appeal defendants contend that the court was without jurisdiction to vacate the settlement solely because their counsel then possessed information, unknown to plaintiff herein, that at the time he was suffering from an aorta aneurysm which may have resulted from the accident, because (1) no mutual mistake of fact was involved; (2) no duty rested upon them to disclose information to plaintiff which they could assume had been disclosed to him by his own physicians; (3) insurance limitations as well as physical injuries formed the basis for the settlement; and (4) plaintiff's motion to vacate the order for settlement and to set aside the releases was barred by the limitations provided in Rule 60.02 of Rules of Civil Procedure.[1]

After the accident, David's injuries were diagnosed by his family

---

[1]Rule 60.02 of Rules of Civil Procedure provides in part: "On motion * * * the court may relieve a party * * * from a final * * * order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.03; (3) fraud (whether * * * intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * * or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. * * * This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, * * * or to set aside a judgment for fraud upon the court."

physician, Dr. James H. Cain, as a severe crushing injury of the chest with multiple rib fractures; a severe cerebral concussion, probably with petechial hemorrhages of the brain; and bilateral fractures of the clavicles. At Dr. Cain's suggestion, on January 3, 1957, David was examined by Dr. John F. Pohl, an orthopedic specialist, who made X-ray studies of his chest. Dr. Pohl's detailed report of this examination included the following:

"* * * The lung fields are clear. The heart and aorta are normal."

Nothing in such report indicated the aorta aneurysm with which David was then suffering. On March 1, 1957, at the suggestion of Dr. Pohl, David was examined from a neurological viewpoint by Dr. Paul S. Blake, and in the report of this examination there was no finding of the aorta aneurysm.

In the meantime, on February 22, 1957, at defendants' request, David was examined by Dr. Hewitt Hannah, a neurologist. On February 26, 1957, the latter reported to Messrs. Field, Arvesen & Donoho, attorneys for defendant John Zimmerman, as follows:

"The one feature of the case which bothers me more than any other part of the case is the fact that this boy of 20 years of age has an aneurysm, which means a dilatation of the aorta and the arch of the aorta. Whether this came out of this accident I cannot say with any degree of certainty and I have discussed it with the Roentgenologist and a couple of Internists. * * * Of course an aneurysm or dilatation of the aorta in a boy of this age is a serious matter as far as his life. This aneurysm may dilate further and it might rupture with further dilatation and this would cause his death.

"It would be interesting also to know whether the X-ray of his lungs, taken immediately following the accident, shows this dilatation or not. If it was not present immediately following the accident and is now present, then we could be sure that it came out of the accident."

Prior to the negotiations for settlement, the contents of the above report were made known to counsel for defendants Florian and John Ledermann.

The case was called for trial on March 4, 1957, at which time

the respective parties and their counsel possessed such information as to David's physical condition as was revealed to them by their respective medical examiners as above described. It is thus apparent that neither David nor his father, the nominal plaintiff in the prior action, was then aware that David was suffering the aorta aneurysm but on the contrary believed that he was recovering from the injuries sustained in the accident.

On the following day an agreement for settlement was reached wherein, in consideration of the payment of $6,500, David and his father agreed to settle in full for all claims arising out of the accident.

Richard S. Roberts, counsel for David, thereafter presented to the court a petition for approval of the settlement, wherein David's injuries were described as:

"* * * severe crushing of the chest, with multiple rib fractures, severe cerebral concussion, with petechial hemorrhages of the brain, bilateral fractures of the clavicles."

Attached to the petition were affidavits of David's physicians, Drs. James H. Cain and Paul S. Blake, wherein they set forth the same diagnoses they had made upon completion of their respective examinations of David as above described. At no time was there information disclosed to the court that David was then suffering from an aorta aneurysm which may have been the result of the accident. Based upon the petition for settlement and such affidavits of Drs. Cain and Blake, the court on May 8, 1957, made its order approving the settlement.

Early in 1959, David was required by the army reserve, of which he was a member, to have a physical checkup. For this, he again engaged the services of Dr. Cain. In this checkup, the latter discovered the aorta aneurysm. He then reexamined the X rays which had been taken shortly after the accident and at this time discovered that they disclosed the beginning of the process which produced the aneurysm. He promptly sent David to Dr. Jerome Grismer for an examination and opinion. The latter confirmed the finding of the aorta aneurysm and recommended immediate surgery therefor. This was performed by him at Mount Sinai Hospital in Minneapolis on March 10, 1959.

Shortly thereafter, David, having attained his majority, instituted the present action for additional damages due to the more serious injuries including the aorta aneurysm which he alleges proximately resulted from the accident. As indicated above, the prior order for settlement was vacated. In a memorandum made a part of the order vacating the settlement, the court stated:

"The facts material to a determination of the motion are without substantial dispute. The only disputed facts appear to be whether * * * Mr. Roberts, former counsel for plaintiff, discussed plaintiff's injuries with Mr. Arvesen, counsel for defendant Zimmerman, immediately before the settlement agreement, and, further, whether or not there is a causal relationship between the accident and the aneurysm.

"Contrary to the * * * suggestion in the affidavit of Mr. Roberts that he discussed the minor's injuries with Mr. Arvesen, the Court finds that no such discussion of the specific injuries claimed occurred prior to the settlement agreement on March 5, 1957.

"* * * the Court finds that although the aneurysm now existing is causally related to the accident, such finding is for the purpose of the motions only and is based solely upon the opinion expressed by Dr. Cain (Exhibit 'F'), which, so far as the Court can find from the numerous affidavits and statements of fact by counsel, stands without dispute.

\* \* \* \* \*

"The mistake concerning the existence of the aneurysm was not mutual. For reasons which do not appear, plaintiff's doctor failed to ascertain its existence. By reason of the failure of plaintiff's counsel to use available rules of discovery, plaintiff's doctor and all his representatives did not learn that defendants and their agents knew of its existence and possible serious consequences. Except for the character of the concealment in the light of plaintiff's minority, the Court would, I believe, be justified in denying plaintiff's motion to vacate, leaving him to whatever questionable remedy he may have against his doctor and against his lawyer.

"That defendants' counsel concealed the knowledge they had is not disputed. The essence of the application of the above rule is the char-

acter of the concealment. Was it done under circumstances that defendants must be charged with knowledge that plaintiff did not know of the injury? If so, an enriching advantage was gained for defendants at plaintiff's expense. There is no doubt of the good faith of both defendants' counsel. There is no doubt that during the course of the negotiations, when the parties were in an adversary relationship, no rule required or duty rested upon defendants or their representatives to disclose this knowledge. However, once the agreement to settle was reached, it is difficult to characterize the parties' relationship as adverse. At this point all parties were interested in securing Court approval. * * *

"But it is not possible to escape the inference that defendants' representatives knew, or must be here charged with knowing, that plaintiff under all the circumstances would not accept the sum of $6,500.00 if he or his representatives knew of the aneurysm and its possible serious consequences. Moreover, there is no showing by defendants that would support an inference that plaintiff and his representatives knew of the existence of the aneurysm but concluded that it was not causally related to the accident.

"When the adversary nature of the negotiations concluded in a settlement, the procedure took on the posture of a joint application to the Court, at least so far as the facts upon which the Court could and must approve settlement is concerned. It is here that the true nature of the concealment appears, and defendants' failure to act affirmatively, after having been given a copy of the application for approval, can only be defendants' decision to take a calculated risk that the settlement would be final. * * *

"To hold that the concealment was not of such character as to result in an unconscionable advantage over plaintiff's ignorance or mistake, would be to penalize innocence and incompetence and reward less than full performance of an officer of the Court's duty to make full disclosure to the Court when applying for approval in minor settlement proceedings."

■ The principles applicable to the court's authority to vacate settlements made on behalf of minors and approved by it appear well

established. With reference thereto, we have held that the court in its discretion may vacate such a settlement, even though it is not induced by fraud or bad faith, where it is shown that in the accident the minor sustained separate and distinct injuries which were not known or considered by the court at the time settlement was approved, Larson v. Stowe, 228 Minn. 216, 36 N. W. (2d) 601, 8 A. L. R. (2d) 455; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; Dasich v. La Rue Min. Co. 126 Minn. 194, 148 N. W. 45; and even though the releases furnished therein purported to cover both known and unknown injuries resulting from the accident. Larson v. Stowe, *supra.* The court may vacate such a settlement for mistake even though the mistake was not mutual in the sense that both parties were similarly mistaken as to the nature and extent of the minor's injuries, but where it is shown that one of the parties had additional knowledge with respect thereto and was aware that neither the court nor the adversary party possessed such knowledge when the settlement was approved. As stated in Keller v. Wolf, 239 Minn. 397, 401, 58 N. W. (2d) 891, 895:

"* * * although in Minnesota the mistake need not be 'mutual' * * * there must be concealment or, at least, knowledge on the part of one party that the other party is laboring under a mistake in order to set aside a release for unilateral mistake. Equity will prevent one party from taking an unconscionable advantage of another's mistake for the purpose of enriching himself at the other's expense."

From the foregoing it is clear that in the instant case the court did not abuse its discretion in setting aside the settlement which it had approved on plaintiff's behalf while he was still a minor. It is undisputed that neither he nor his counsel nor his medical attendants were aware that at the time settlement was made he was suffering from an aorta aneurysm which may have resulted from the accident. The seriousness of this disability is indicated by Dr. Hannah's report indicating the imminent danger of death therefrom. This was known by counsel for both defendants but was not disclosed to the court at the time it was petitioned to approve the settlement. While no canon of ethics or legal obligation may have required them to inform plaintiff

or his counsel with respect thereto, or to advise the court therein, it did become obvious to them at the time that the settlement then made did not contemplate or take into consideration the disability described. This fact opened the way for the court to later exercise its discretion in vacating the settlement and under the circumstances described we cannot say that there was any abuse of discretion on the part of the court in so doing under Rule 60.02(6) of Rules of Civil Procedure.[2]

■ Defendants contend that, since plaintiff's counsel also had information with respect to plaintiff's injuries which was not disclosed to the court at the time settlement was made and which might have caused the court to withhold approval thereof, plaintiff cannot in good conscience now seek to have the settlement set aside. Without determining whether a minor would be thus bound by his counsel's actions, we find no basis for defendants' contentions in this respect. Their claim has reference to a letter of Dr. Paul S. Blake to plaintiff's counsel dated March 1, 1957, wherein he stated:

"* * * There may be some permanent brain injury in association with such a condition [cerebral concussion and contusion]. * * *

"I think I can say that he has a post-concussion syndrome, moderately severe and that these symptoms will probably improve gradually over the next 6 to 12 months. * * * I would recommend that this case not be settled for at least a year or so that these findings can be definitely assessed and so that we can guard against any unforeseen complications developing."

While this letter was not submitted to the court at the time it approved the settlement, it does appear that an affidavit of Dr. Blake attached to the petition asking approval of the settlement was submitted to it. Therein the following appears:

"* * * That your affiant conclude[s] on that date [February 22, 1957] that David Spaulding had had a cerebral concussion and contusion and probably had some post-concussion cerebral edema. That there may be some permanent brain injury in association with such a condition, and that he is probably having a post-concussion syndrome

---

[2]See, Wright, Minnesota Rules, p. 351.

and that these symptoms will probably improve gradually over the next six to twelve months."

It is clear therefrom that all essential and basic information as to plaintiff's concussion with the possibility of some permanent brain injury was fully disclosed to the court before it approved the settlement; and that this factual situation would not be sufficient to estop plaintiff from seeking to have the settlement vacated because the aorta aneurysm had not been disclosed to the court or taken into consideration at the time such settlement was approved.

It is also suggested that the settlement made on behalf of the minor was in part at least dependent upon insurance limitations relating to plaintiff's injuries; and that these having been a factor should constitute a bar to the court's exercise of its discretion in vacating such settlement. No decisions are cited in support of this contention. There are, however, numerous decisions holding that insurance limitations have no part in the trial of actions relating to personal injuries or property damage, Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582; Lee v. Osmundson, 206 Minn. 487, 289 N. W. 63; see, also, Brown v. Murphy Transfer & Storage Co. 190 Minn. 81, 251 N. W. 5; and it would seem fairly clear that the principles governing this rule would be equally applicable here. In any event, there is nothing in the record which lends support to defendants' contention in this respect. Nowhere does it indicate that defendants had disclosed either to counsel for the plaintiff or to the court that insurance limitations were involved in the settlement; or that otherwise the court had knowledge thereof or gave consideration thereto at the time it approved the settlement. Under all such circumstances, no weight can be given to this argument.

Affirmed.

Mr. Justice Rogosheske took no part in the consideration or decision of this case.