Vincent VIRZI, Plaintiff,

v.

**GRAND TRUNK WAREHOUSE AND COLD STORAGE CO., an unregistered business, and Beatrice Foods, Co., a Delaware corporation, jointly and separately, Defendants.**

**Civ. A. No. 82–71223.**

United States District Court,
E.D. Michigan, S.D.

Sept. 29, 1983.

Milan, Miller, Berger, Brody & Miller, P.C. by Gary C. Berger, Detroit, Mich., for plaintiff.

Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen by Henry J. Maher, Detroit, Mich., for defendants.

## OPINION

GILMORE, District Judge.

This case raises an important issue relating to the ethical obligation of an attorney to inform opposing counsel and the Court, prior to concluding a settlement, of the death of his client. For the reasons set forth in this opinion, the Court holds the attorney has an absolute ethical obligation to do so, and sets aside the settlement ordered in this matter.

### I

This is a personal injury diversity action. Pursuant to the authority contained in Rule 32 of the Rules of the United States District Court for the Eastern District of Michigan,[1] the case was referred to a mediation panel for mediation prior to the final pretrial conference.

On June 2, 1983, plaintiff's attorney prepared and filed a mediation statement for plaintiff with the mediation panel. Three days later, plaintiff died unexpectedly from causes unrelated to the lawsuit. On June 14, 1983, the case was mediated, and the mediation panel placed an evaluation of $35,000 on the case. At the time of the mediation hearing, plaintiff's attorney did not know that his client had died.[2]

Several days after the mediation hearing of June 14, plaintiff's attorney learned of

his client's death. A personal representative was appointed by the probate court on June 24, 1983 to administer plaintiff's estate, although no suggestion of death was made in this Court, and the representative was not substituted as plaintiff.

On July 5, 1983, counsel for plaintiff and defendants appeared before this Court at a pretrial conference and, after negotiations, entered into a settlement of the lawsuit for the amount of the mediation award—$35,-000. At no time, from the time plaintiff's attorney learned of the plaintiff's death until the agreement to settle the case for $35,000 at the pretrial conference, did plaintiff's attorney notify defendants' attorney or the Court of the death of the plaintiff.

After the settlement was agreed upon in chambers and placed upon the record, as both attorneys were walking out of chambers to the elevator together, plaintiff's attorney, for the first time, informed defendants' attorney that plaintiff had died. The facts also show that defendants had learned of plaintiff's death shortly before the settlement was agreed upon, but were unable to convey this information to their attorney before the settlement order was entered. At no time did defendants' attorney ask plaintiff's attorney if plaintiff was still alive and available for trial.

Defendants' counsel claims that his sole reason for recommending acceptance of the mediation award was that plaintiff would have made an excellent witness on his own behalf if the case had gone to trial.

Defendants contend that because their lawyer did not know of plaintiff's death at the time of the settlement, and because plaintiff's attorney failed to disclose that fact, the settlement is void. Defendants also argue that the settlement should be void because, although an administrator had been appointed for plaintiff's estate, there was no proper substitution of that party at the time the Court entered its

1. Rule 32 of the Local Rules of the United States District Court for the Eastern District of Michigan allows the Court to submit any civil diversity case to mediation when the relief

sought is exclusively money damages. For details of the operation of mediation, see Rule 32.

2. It should be noted that attendance of clients is not generally required in mediation hearings.

settlement offer, and, therefore, there was no party with whom a settlement could properly be made.

Plaintiff's attorney, on the other hand, contests defendants' motion, claiming that his actions were not unethical or improper. He states that plaintiff was alive at the time the mediation statement was filed and that there was nothing in the statement that was false and misleading. He also points out that he was not aware at the time of the mediation hearing that his client was dead, and did not become aware of that until three days after the award of the mediation panel.

In oral argument, plaintiff's attorney indicated that, had defendants' attorney asked him if his client was still alive at the time of the pretrial hearing before this Court, or had the Court asked the same question, he would have revealed the fact that he was dead. He says, however, that he had no duty to volunteer that information and that the settlement entered into is a fair and reasonable settlement.

Finally, plaintiff's counsel argues that the Court had the authority to enter the settlement order in this matter, even though plaintiff was deceased, because a personal representative had been properly appointed by the probate court. He argues that the settlement is binding even though a formal motion to substitute the representative for the deceased plaintiff was never made.

## II

The sole issue in the case is whether plaintiff's attorney had an ethical duty to advise this Court and defendants' attorney, who was unaware of the death of plaintiff, that plaintiff had died a few weeks prior to the settlement agreement.

Disciplinary Rule 7–102(A) of the American Bar Association Model Code of Professional Responsibility, which is applicable to lawyers practicing in the United States District Court for the Eastern District of Michigan[3], provides:

(A) In his representation of a client, a lawyer shall not:

. . . . .

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

. . . . .

(5) Knowingly make a false statement of law or fact.

Ethical Consideration 7–27[4] provides: "Because it interferes with the proper administration of justice, a lawyer should not suppress evidence that he or his client has a legal obligation to reveal or produce..."

Rule 3.3 of the Model Rules of Professional Conduct, adopted by the American Bar Association in August of 1983, provides in pertinent part:[5]

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

. . . . .

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its

---

**3.** See Rule A–4, Standards for Professional Conduct, of the Local Rules of the United States District Court for the Eastern District of Michigan, which adopts the Code of Professional Responsibility for this Court, that is adopted by the State of Michigan. Disciplinary Rule 7–102(A) has been adopted by the Michigan Supreme Court.

**4.** The Ethical Considerations were not adopted by the Supreme Court of Michigan at the time it adopted the Code of Professional Responsibility, and, therefore, have not been adopted by this Court. Nevertheless, the Ethical Considerations constitute a body of principles upon which a lawyer can rely for guidance in many situations and therefore are relevant on the consideration of this matter.

**5.** The Model Rules of Professional Conduct have not been adopted by the Supreme Court of Michigan or by this Court. Nevertheless, they reflect the most recent thinking on the subject of legal ethics by the American Bar Association.

falsity, the lawyer shall take reasonable remedial measures.

(6) the duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.[6]

In commenting upon Rule 3.3, the American Bar Association states: "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." The comment, however, does not define or identify such circumstances.

Rule 4.1 of the Model Rules of Professional Conduct provides:

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of material fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited Rule 1.6.

In the commentary on Rule 4.1, the drafters state: "A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts." The drafters also state that: "Misrepresentations can also occur by failure to act." Like the Rules discussed above, this Rule proscribes certain behavior by attorneys in an effort to maintain the integrity of the legal system. It does not, however, define or identify the circumstances in which the Rule is designed to apply.

**6.** Rule 1.6 provides for confidentiality of information. Its specific provisions are:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

The Court also cannot rely on case law to define the parameters of these Rules as there is a paucity of case law on the subject. Nonetheless, the following decisions are helpful. In *Spaulding v. Zimmerman,* 263 Minn. 346, 116 N.W.2d 704 (1962), plaintiff was injured in an automobile accident. In addition to plaintiff's physician and two specialists, a fourth physician examined plaintiff at the request of defendants. The defendants' physician found an aneurysm of the aorta, which escaped the notice of the other physicians, and he reported this condition to defendants' lawyers.

Without disclosing this condition to plaintiff or plaintiff's counsel, defendants settled the case. Two years later, plaintiff, at a subsequent physical examination, learned of the aneurysm and brought an action for additional damages against the same defendants. The trial judge vacated the earlier settlement, and his order vacating the settlement was affirmed on appeal.

The Minnesota Court found that there was no duty on defendants to voluntarily disclose this knowledge during the course of negotiations, when the parties were in an adversary relationship, but that a duty to disclose arose once the parties reached a settlement and sought the court's approval. It quoted with approval the language of the trial court:

To hold that the concealment was not of such character as to result in a nonconscionable advantage over plaintiff's ignorance or mistake, would be to penalize innocence and incompetence and reward less than full performance of an officer of the Court's duty to make full disclo-

(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

sure to the Court when applying for approval in minor settlement proceedings. *Id.* 116 N.W.2d at 709.

The Minnesota Court held that defendants' knowing failure to disclose this condition opened the way for the court to later exercise its discretion in vacating the settlement. *Zimmerman* was followed by two cases in the Minnesota Supreme Court, *Newman v. Fjeldstad,* 271 Minn. 514, 137 N.W.2d 181 (1965) and *Simons v. Schiek's Inc.,* 275 Minn. 132, 145 N.W.2d 548 (1966).

In *Toledo Bar Association v. Fell,* 51 Ohio St.2d 33, 364 N.E.2d 872 (1977), an attorney specializing in workman's compensation law, with knowledge of the long-established practice of the Ohio Industrial Commission to deny any claim for permanent total disability benefits upon notice of death of a claimant, deliberately withheld information concerning his client's death prior to a hearing on a motion concerning the claim in order to collect a fee. The Supreme Court of Ohio held that this action violated the Code of Professional Responsibility and justified an indefinite suspension from the practice of law.

The State Bar of Michigan Committee on Professional and Judicial Ethics, Formal Opinion No. 142, issued in February 1951, Michigan State Bar Journal, Special Issue Vol. 57 No. 2A (Feb., 1978), addressed a comparable problem. The ethical problem involved concerned the duty of a lawyer who knew that he was representing a minor, but failed to disclose this fact to the court at the earliest opportunity and take steps to have a guardian ad litem appointed. The Opinion stated in pertinent part:

... While it is expected that each lawyer will contend with zeal for the rights of his client, nevertheless he owes an affirmative duty of absolute candor and frankness to the court which transcends his private employment.

Under the law of our state, a judgment entered against a minor, without prior appointment of a guardian ad litem ... will not be allowed to stand. A lawyer cannot sit back, knowing this procedural defect, and permit the court, who is with-

out knowledge that the defendant is a minor, to try a case and proceed to judgment. The duty of candor and fairness is not confined to answering truthfully those questions propounded by the court to counsel. It also requires affirmative action on the part of the lawyer to disclose to the court upon his own initiative the status of a defendant who is a minor. In fairness to the court, the lawyer owes an affirmative duty to disclose such fact ... at his earliest opportunity.... To do otherwise would be to permit the court to devote his time to the trial of a cause while the lawyer is gambling that the trial may end in a nullity. A lawyer has no right to seek to advantage his client at the expense of the court.

*Id.* at 180.

Here, plaintiff's attorney did not make a false statement regarding the death of plaintiff. He was never placed in a position to do so because during the two weeks of settlement negotiations defendants' attorney never thought to ask if plaintiff was still alive. Instead, in hopes of inducing settlement, plaintiff's attorney chose to not disclose plaintiff's death, as he was well aware that defendants believed that plaintiff would make an excellent witness on his own behalf if the case were to proceed to trial by jury. Here, unlike the factual information withheld in *Spaulding,* above, plaintiff's death was not caused by injuries related to the lawsuit, and did not have any effect on the fairness of the $35,000 mediation award. But the fact of plaintiff's death nevertheless would have had a significant bearing on defendants' willingness to settle.

Also, while a personal representative was appointed by the probate court for the deceased, plaintiff's attorney failed prior to settlement to make a suggestion of death in the record before this Court, or to move for substitution of parties in accordance with Rule 25 of the Federal Rules of Civil Procedure. By not informing the Court of plaintiff's death, or filing a motion to substitute parties, plaintiff's attorney led this Court to enter an order of settlement for a non-exis-

tent party. Arguably, this settlement order may be rendered void by Rule 25. The failure of counsel to inform this Court of plaintiff's death is not insignificant, particularly in light of Rule 25, and is not unlike the factual situation in the State Bar Opinion No. 142 discussed above in which a lawyer was disciplined for failing to disclose to the tribunal that he was representing a minor.

■ There is no question that plaintiff's attorney owed a duty of candor to this Court, and such duty required a disclosure of the fact of the death of a client. Although it presents a more difficult judgment call, this Court is of the opinion that the same duty of candor and fairness required a disclosure to opposing counsel, even though counsel did not ask whether the client was still alive. Although each lawyer has a duty to contend, with zeal, for the rights of his client, he also owes an affirmative duty of candor and frankness to the Court and to opposing counsel when such a major event as the death of the plaintiff has taken place.

This Court's position on the ethical duty of a lawyer dealing with an opposing party is well summarized by a passage from Judge Rubin's article entitled "A Causerie on Lawyer's Ethics in Negotiations," 35 La. L.Rev. 577 (1975). He writes:

If he is a professional and not merely a hired, albeit skilled hand, the lawyer is not free to do anything his client might do in the same circumstances. The corollary of that proposition does set a minimum standard: the lawyer must be at least as candid and honest as his client would be required to be. The agent of the client, that is, his attorney-at-law, must not perpetrate the kind of fraud or deception that would vitiate a bargain if practiced by his principal. Beyond that, the profession should embrace an affirmative ethical standard for attorney's professional relationships with courts, other lawyers and the public: *The lawyer must act honestly and in good faith.* Another lawyer ... who deals with a lawyer should not need to exercise the same degree of caution that he would if trading for reputedly antique copper jugs in an oriental bazaar. It is inherent in the concept of an ethic, as a principle of good conduct, that it is morally binding on the conscience of the professional, and not merely a rule of the game adopted because other players observe (or fail to adopt) the same rule. Good conduct exacts more than mere convenience ...

... Candor is not inconsistent with striking a deal on terms favorable to the client, for it is known to all that, at least within limits, that is the purpose to be served ... The distinction between honesty and good faith need not be finely drawn here; all lawyers know that good faith requires conduct beyond simple honesty.

*Id.* at 589–90.

This Court feels that candor and honesty necessarily require disclosure of such a significant fact as the death of one's client. Opposing counsel does not have to deal with his adversary as he would deal in the marketplace. Standards of ethics require greater honesty, greater candor, and greater disclosure, even though it might not be in the interest of the client or his estate.

■ The handling of a lawsuit and its progress is not a game. There is an absolute duty of candor and fairness on the part of counsel to both the Court and opposing counsel. At the same time, counsel has a duty to zealously represent his client's interests. That zealous representation of interest, however, does not justify a withholding of essential information, such as the death of the client, when the settlement of the case is based largely upon the defense attorney's assessment of the impact the plaintiff would make upon a jury, because of his appearance at depositions. Plaintiff's attorney clearly had a duty to disclose the death of his client both to the Court and to opposing counsel prior to negotiating the final agreement.

■ For the foregoing reasons, the settlement will be set aside and the case rein-

stated on the docket for trial. Counsel may present an order.