Allen K. GAILOR, Public Administrator and Personal Representative of the Estate of Fred Whalen, Appellant.

v.

Hashim M. ALSABI, Appellee.

No. 97–SC–191–DG.

Supreme Court of Kentucky.

Feb. 18, 1999.

Rehearing Denied June 17, 1999.

A. Campbell Ewen, David W. Son, Ewen, Bush & Kinney, Louisville, KY, for appellant.

David Bradley Mour, K. Tracy Rigor, Borowitz & Goldsmith, PLC, Louisville, KY, for appellee.

COOPER, Justice.

This action arises out of an automobile accident which occurred on June 3, 1991 on Taylor Boulevard in Louisville, Jefferson County, Kentucky. Two vehicles were involved in the accident, one owned and operated by Appellee Hashim M. Alsabi and the other owned and operated by Fred Whalen. Appellee was the named insured of a policy of insurance issued by Kentucky Farm Bureau Mutual Insurance Company, which paid $7,238.90 in basic reparation benefits (BRB) for chiropractic bills incurred by Appellee. It is stipulated that the last BRB payment was made on

February 4, 1992. Fred Whalen was the named insured of a policy of liability insurance issued by Allstate Insurance Company.

Whalen died of natural causes at the age of eighty-two on February 5, 1992. His will was admitted to probate by the Jefferson District Court on March 2, 1992. In her petition for probate, Whalen's widow and sole beneficiary requested that she be appointed executrix of his estate. Instead, the district judge admitted the will to probate without appointing a personal representative. The probated will was filed as a public record in the office of the Jefferson County Court Clerk on March 10, 1992.

On February 3, 1994, Appellee filed this action against Fred Whalen and caused summons to issue against him at 2032 Lytle Street, Louisville, Kentucky, the address listed on the accident report. The summons was returned on February 16, 1994 with the notation that Whalen was deceased. Appellee's attorney asserts that he did not learn of Whalen's death until April 6, 1994. He did not move that the public administrator be appointed to administer Whalen's estate pursuant to KRS 395.390 until September 22, 1994. The appointment was made on November 17, 1994. On January 19, 1995, Appellee filed an amended complaint substituting the public administrator as party defendant in place of Whalen.

The trial court granted summary judgment[1] in favor of the administrator on grounds that the action was barred by limitations. The Court of Appeals reversed, holding that CR 15.03(2) permitted the relation back of the amended complaint to the date the original complaint was filed. We granted discretionary review.

## I. LIMITATIONS.

 As a general rule, a cause of action for personal injuries arising out of an automobile accident must be brought within two years after the date of injury or the last payment of basic reparation benefits. KRS 304.39–230(6). Thus, the period of limitations with respect to this cause of action expired on February 4, 1994, one day after the original complaint was filed. KRS 446.030(1)(a); *Derossett v. Burgher,* Ky., 555 S.W.2d 579 (1977). Although the action was filed within the period of limitations, the only defendant named in the complaint was deceased. Since the complaint did not name a party defendant over whom the circuit court could acquire jurisdiction, the complaint was a nullity. *Ratliff v.. Oney,* Ky.App., 735 S.W.2d 338 (1987); *Mitchell v. Money,* Ky.App., 602 S.W.2d 687 (1980). The amended complaint was filed long after the expiration of the period of limitations.

 KRS 396.011 affords no relief in this case. Subsection (1) of that statute requires that a claim against an estate must be presented "within six (6) months after appointment of the personal representative...." Appellee notes that his amended complaint was filed within six months after the appointment of the public administrator. We need not address whether the filing of a complaint satisfies the requirement of a formal presentation of a claim; for KRS 396.011(1) clearly limits its applicability to claims against estates which are "not barred earlier by other statute[s] of limitations." KRS 396.011(2)(b) excludes from the operation of that statute "[t]o the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which he is protected by liability insurance." This only means that a claim of tort liability not preserved by a formal presentation of a claim within six months of the appointment of the personal representative is not

---

1. The administrator initially filed a motion to dismiss pursuant to CR 12.02. However, since documents outside the pleadings were presented to and considered by the trial judge, the motion was converted into one for summary judgment. CR 12.02; *Ferguson v. Oates,* Ky., 314 S.W.2d 518 (1958).

barred, except to the extent that the claim exceeds the limits of any applicable liability insurance coverage. The purpose of the statute is to protect the personal estate of the decedent, not his insurance company. The statute does not purport to affect any other applicable statute of limitations. Whether Appellee did or did not present a formal claim to the public administrator within six months of his appointment is immaterial, because this claim was barred by KRS 304.39–230(6) nine months before the appointment was made. Nor does KRS 413.180 have any application to this case. That statute pertains only to an action filed *by* an estate, not an action filed *against* an estate.

## II. CR 15.03(2).

■ Appellee's primary argument has always been the one which was adopted by the Court of Appeals, *i.e.*, that the amended complaint of January 19, 1995 related back to the date of the filing of the original complaint, February 3, 1994, thus was not barred by limitations. CR 15.03(2) provides as follows:

> An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied and, *within the period provided by law for commencing the action against him,* the party to be brought in by amendment (a) *has received such notice of the institution of the action* that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, *the action would have been brought against him.* (Emphasis added.)

■■ The period of limitations expired on February 4, 1994. Fred Whalen had been deceased for almost two years when this action was filed. The administrator of his estate did not exist as a legal entity until November 17, 1994, more than nine months after the expiration of the period of limitations.

[T]he relation back rule mandates that the party to be named in an amended pleading knew or should have known about the action brought against him. CR 15.03(2)(b). Actual, formal notice may not be necessary. *Cf. Funk v. Wagner Machinery, Inc.*, Ky.App., 710 S.W.2d 860 (1986). Nevertheless, knowledge of the proceedings against him gained during the statutory period must be attributed to the defendant.

*Nolph v. Scott,* Ky., 725 S.W.2d 860, 862 (1987).

■ Although Appellee's attorney filed in the record a copy of a letter he mailed to Allstate enclosing a copy of the complaint, that letter is dated February 4, 1994, the last day of the period of limitations, and presumably did not arrive in Allstate's office on the same day it was mailed. (Unlike other correspondence from Appellee's attorney to Allstate, this letter does not contain the notation that it was sent *"VIA TELECOPIER."*) Regardless, Allstate was not named as a party defendant in either the complaint or the amended complaint; thus, CR 15.03(2)(b) could not apply to it.

Appellee's reliance on *Richardson v. Dodson,* Ky., 832 S.W.2d 888 (1992) is misplaced. In that case, the plaintiff sued the proper defendants within the period of limitations. His error was that he brought the action in his own name instead of as administrator of the decedent's estate. He was permitted to amend his complaint to correct the error after the expiration of the period of limitations. The defendants had notice of the institution and nature of the action within the period of limitations. Obviously, they were not prejudiced by the amendment, thus CR 15.03(2) applied. In this case, Appellee did not sue the proper defendant; and the proper defendant (the administrator) could not have had notice within the period of limitations, because he had not yet been appointed.

### III. ESTOPPEL.

 Appellee suggests that Allstate should be estopped to rely on the issue of limitations, because its claims adjuster, Peggy Smith, failed to inform Appellee's attorney of Fred Whalen's demise. We note at the outset that this issue is not preserved for review. The Court of Appeals decided this case solely on the basis that CR 15.03(2) permitted the relation back of the amended complaint to the date the original complaint was filed. With respect to this issue, the Court of Appeals stated: "It is of no consequence that at the time Alsabi filed the litigation he was not aware of Whalen's death." Slip op., p. 3. Appellant requested review only of the issues of limitations and the effect of CR 15.03(2). Appellee did not file a cross-motion for discretionary review. As was stated in *Commonwealth, Transportation Cabinet, Department of Highways v. Taub*, Ky., 766 S.W.2d 49 (1988):

> We will not address issues raised but not decided by the Court below. It is the rule in this jurisdiction that issues raised on appeal but not decided will be treated as settled against the appellant in that court upon subsequent appeals unless the issue is preserved by cross-motion for discretionary review. CR 76.21(1); *Nashville, C. & St.L. Ry. Co. v. Banks*, 168 Ky. 579, 182 S.W. 660 (1916); and *Eagle Fluorspar Co. v. Larue*, 237 Ky. 263, 35 S.W.2d 303 (1931). In this case, counsel for Taub argued that the Secretary of Transportation is without power to certify a road for condemnation which is not in the six-year plan or expressly authorized by the General Assembly. This issue was touched upon by Taub in the Court of Appeals but not commented upon by the Court in its opinion. As such, the issue is deemed to have been decided adversely to Taub and his failure to file a cross-motion for discretionary review precluded further review in this Court.

*Id.* at 51–52. *See also Perry v. Williamson*, Ky., 824 S.W.2d 869, 871 (1992); *Stevens v. Stevens*, Ky., 798 S.W.2d 136, 139 (1990); *Green River Health Dept. v. Wigginton*, Ky., 764 S.W.2d 475 (1989). Nevertheless, because the merits of this issue are discussed at length in the dissenting opinion, they will also be addressed here.

On April 29, 1992, Appellee's attorney notified Peggy Smith, the Allstate claims adjuster, that his office would be representing Appellee with respect to injuries sustained in the June 1991 accident. Whalen was already deceased at that time and his probated will was a public record in the Jefferson County Clerk's Office.

The next correspondence in the record is a letter from Appellee's attorney to Smith dated May 13, 1993. That letter contains the following file reference:

> RE: Claim No. 2200555320 KPS
> Date of Loss—June 3, 1991
> Your Insured—Fred Whalen
> Our Client—Hashim Alsabi

The letter acknowledged and rejected a settlement offer of $2,000 .00 and advised that a counteroffer would be forthcoming within the week. The last paragraph of the letter contains the following:

> Although the statute of limitations on this claim will not run until 1994 (because of the last payment made by the basic reparations [sic] obligor), I prefer to file a lawsuit (if necessary) within two years after the date of the accident. As you know, this accident was June 3, 1991, meaning the target date for either settling this claim or filing a lawsuit is June 2, 1993.

The record does not reflect whether Appellee's attorney followed through on his promise of a counteroffer within the week. However, he did not file suit on his "target date" of June 2, 1993. The next correspondence between Appellee's attorney and Allstate did not occur until October 15, 1993.

Meanwhile, on September 8, 1993, Fred Whalen's daughter-in-law, an employee of the attorney who had handled the probate of Whalen's estate, notified Peggy Smith by telephone that Whalen had died on

February 5, 1992. She confirmed this verbal advice with a letter of the same date. That letter contained the following file reference:

RE: Claim No.: 2200555320 KPS
 Insured: Fred Whalen

On October 15, 1993, Smith sent Appellee's attorney a letter reiterating the previous settlement offer of $2,000.00 and inquiring about any additional medical information. The letter contained the following file reference:

| | |
|---|---|
| Claim Number: | 2200555320 KPS |
| Loss Date: | June 3, 1991 |
| Our Insured: | FRED WHALEN |
| Location: | TAYLOR BLVD, LOUISVILLE |
| Claimant: | HASHIM ALSABI |

Apparently, Appellee's attorney did not respond to this letter; for on November 22, 1993, Smith sent him another letter containing the same file reference, which stated simply as follows:

"I am writing to follow up with you on your client Hashim Alsabi. Please provide an update."

The next correspondence between Appellee's attorney and Allstate was the February 4, 1994 letter by which Appellee's attorney forwarded Allstate a copy of the complaint filed in this action. That letter contained the following file reference:

| | | |
|---|---|---|
| RE: | Claim No.: | 2200555320 |
| | Loss Date: | June 3, 1991 |
| | Your Insured: | Fred Whalen |
| | Location: | Taylor Blvd. Louisville |
| | Claimant: | Hashim Alsabi |

■ Appellee argues that Smith's renewed offers and inquiries regarding possible settlement without revealing that Whalen was deceased estops Allstate from now relying on the defense of limitations. Mere negotiations looking toward amicable settlement do not afford a basis for estoppel to plead limitations. *Black v. Maglinger*, Ky., 444 S.W.2d 747 (1969); *Brown v. Noland Company*, Ky., 403 S.W.2d 33 (1966); *Cuppy v. General Accident Fire & Life Assurance Corp.*, Ky., 378 S.W.2d 629 (1964); *Burke v.. Blair*, Ky., 349 S.W.2d 836 (1961); *Pospisil v. Miller*, Ky., 343 S.W.2d 392 (1961); *Jackson v. Jackson*, Ky., 313 S.W.2d 868 (1958); *Old Mason's Home of Kentucky, Inc. v. Mitchell*, Ky.

App., 892 S.W.2d 304 (1995). Instead, there must be "some *act or conduct* which in point of fact misleads or deceives the plaintiff and obstructs or prevents him from instituting his suit while he may do so." *Munday v. Mayfair Diagnostic Laboratory*, Ky., 831 S.W.2d 912, 914 (1992); *Adams v. Ison*, Ky., 249 S.W.2d 791, 792 (1952) (emphasis added); *see also Miller v. Thacker*, Ky., 481 S.W.2d 19 (1972). The lesson from these cases is that mere silence with respect to the operative fact is insufficient. There must be an affirmative act by the party charged.

■ An exception to this general rule may be found if a party remains silent when the duty to speak or disclose is imposed by law. *Munday v. Mayfair Diagnostic Laboratory, supra,* at 914, *citing Security Trust Co. v. Wilson*, 307 Ky. 152, 210 S.W.2d 336 (1948) and *Kurry v. Frost*, 204 Ark. 386, 162 S.W.2d 48 (1942). In *Munday v. Mayfair Diagnostic Laboratory, supra,* the legal duty was imposed by the assumed name statute, KRS 365.015. In that case, the defendants had not complied with the statute and the plaintiff sued the wrong entity after consulting the assumed name records of both the Secretary of State and the Daviess County Court Clerk. (In this case, Appellee could have learned of Whalen's death by consulting the probate records of the Jefferson County Court Clerk.) In *Security Trust Co. v. Wilson, supra,* the defendant, who had a fiduciary relationship with his niece, was estopped to rely on limitations where he had concealed the fact that he had converted the niece's securities to his own use. And in *Kurry v. Frost, supra,* it was held that a hit-and-run driver could not rely on limitations in the face of a statute which forbade concealing one's identity by leaving the scene of an accident. Obviously, none of those cases have any factual similarity to the case *sub judice.*

■ The facts of our case are more similar to those in *Lingar v. Harlan Fuel Co.*, 298 Ky. 216, 182 S.W.2d 657 (1944), in

which an employee attempted to sue his employer for personal injuries, but did not realize that the employer had dissolved its former corporate self and become a partnership, a fact which could have been readily ascertained by examination of public records.

> [O]ne may not omit to avail himself of readily accessible sources of information concerning particular facts, and thereafter plead as an estoppel the silence of another who has been guilty of no act calculated to induce the party claiming ignorance to refrain from investigating. Appellant had a year in which to ascertain from the public records the true status of his employers, and in all probability a mere inquiry of them would have elicited the truth.

*Id.* at 659.

It is asserted that the file references in Smith's post-September 8, 1993 letters, which refer to "Our insured: Fred Whalen," rather than, *e.g.,* "Our *deceased* insured: Fred Whalen," were calculated to deceive Appellee's attorney into believing that Whalen was still alive. Of course, every businessperson knows that file references are just that: something to assist both the sender's and the addressee's clerical employees in identifying the file into which this correspondence should be placed. Interestingly, even the September 8, 1993 letter to Smith from Whalen's daughter-in-law informing Smith of Whalen's demise contained the file reference: "Insured: Fred Whalen." In fact, Fred Whalen was Allstate's insured. Regardless of Whalen's current mortal status, Allstate remained liable for any damages caused by his negligence which occurred during the policy period.

■ Appellee's attorney did not raise this issue in his brief or argument before the circuit court, or in his brief or argument before the Court of Appeals, or in his brief filed in this Court. This issue was raised for the first time during oral argument, and Appellee's attorney did not claim even then that he was misled by Allstate's file reference. He cited it only as evidence of Allstate's *intent* to mislead. In order to prevail on a theory of estoppel, there must be proof not only of an intent to induce inaction on the party to be estopped, but also of reasonable reliance by the party claiming the estoppel. *Adams v. Ison, supra,* at 793.

In response to Appellant's motion for summary judgment, it was the obligation of Appellee to present some evidence to support his theory of estoppel. CR 56.03, *Gullett v. McCormick,* Ky., 421 S.W.2d 352, 355 (1967); *cf. Hubble v. Johnson,* Ky., 841 S.W.2d 169 (1992). We cannot assume in the absence of evidence that Peggy Smith knew that Appellee's attorney was ignorant of Whalen's demise, or that Smith was thus induced to fraudulently conceal that fact from him. There is no evidence in this record of any communication at all between Smith and Appellee's attorney during the period between September 8, 1993 and February 4, 1994, except for Smith's letters of October 15, 1993 and November 22, 1993, requesting that some communication occur. Perhaps, if Appellee's attorney had responded to these requests, Smith, as was suggested in *Lingar v. Harlan Fuel Co., supra,* might have imparted the crucial information to him. In the absence of any evidence of animus on Smith's part, there can be no claim of fraudulent concealment. In the absence of any evidence of reliance on the part of Appellee's attorney, there can be no estoppel.

■ Finally, it is asserted that the duty imposed by law on Smith to affirmatively inform Appellee's attorney of Whalen's demise is found in the Code of Professional Conduct applicable to licensed attorneys. SCR 3.130, *et seq.* In *Kentucky Bar Association v. Geisler,* Ky., 938 S.W.2d 578 (1997), we disciplined a member of the Kentucky Bar Association for failing to disclose the death of her client to opposing counsel prior to consummating settlement negotiations. Obviously,

the death of a plaintiff substantially impacts the settlement value of his claim for future medical expenses, future lost wages, or future pain and suffering. Appellee's knowledge, or lack thereof, of Whalen's demise would have had little, if any, bearing on the settlement value of Appellee's claim. More importantly, the sole basis for our decision in *Geisler* was that she had violated the Code of Professional Conduct, specifically SCR 3.130–4.1, and ABA Formal Opinion 95–397. Whatever duties the Code of Professional Conduct may impose upon licensed attorneys, it has no relevance to the conduct of laypersons.

Accordingly, we reverse the decision of the Court of Appeals and reinstate the judgment of the Jefferson Circuit Court.

GRAVES, JOHNSTONE and STEPHENS, JJ., concur.

LAMBERT, C.J., dissents by separate opinion, with STUMBO and WINTERSHEIMER, JJ., joining that dissent.

LAMBERT, Chief Justice, dissenting.

Respectfully, I dissent.

The controlling issue in this case is whether alleged acts of misrepresentation, concealment or non-disclosure by the decedent's insurance carrier, Allstate Insurance Co., were sufficient, on grounds of estoppel, to preclude summary judgment against respondent, Alsabi, and in favor of movant, the decedent's administrator. Proper resolution of this issue requires an analysis of the relationship between an insured and an automobile liability insurance carrier to determine whether misconduct by the latter may be attributed to the former so as to prevent the running of statutes of limitations.

On or about June 3, 1991, respondent, Hashim M. Alsabi, and Fred Whalen, movant's decedent, were involved in a motor vehicle accident. Thereafter, respondent received basic reparation benefits from his no-fault carrier, but on February 4, 1992, the last of such payments was made. The next day, February 5, 1992, Fred Whalen, a man of eighty-two years, died of causes unrelated to the motor vehicle accident, and on March 2, 1992, his will was probated by order of the Jefferson District Court. There was no appointment of a personal representative and this circumstance prevailed until respondent obtained appointment of the public administrator in November of 1994, two and one-half years later.

On April 29, 1992, respondent's counsel contacted Allstate, Whalen's liability insurance carrier, concerning settlement of respondent's personal injury claim. Thereafter, counsel for respondent negotiated with Ms. Peggy Smith, the Allstate adjuster handling the claim, concerning settlement. In a letter dated May 13, 1993, respondent's counsel replied to Ms. Smith's letter of April 26, 1993, and discussed the method of calculating the value of the claim and advised Ms. Smith that he would recommend rejection of her existing offer. Respondent's counsel also established a target date for commencement of litigation if no settlement was achieved. Exactly when the Allstate adjuster, Ms. Smith, learned of Fred Whalen's death is unknown, but there is no doubt that on or about September 8, 1993, she was so informed. On that date, Mrs. Crystal G. Whalen, the decedent's daughter-in-law, wrote Ms. Smith confirming their conversation of that same date and in the letter stated that Mr. Whalen had passed away on February 5, 1992. In her letter, Crystal G. Whalen also expressed the concern of her mother-in-law, the decedent's widow, as follows:

As I advised, Mrs. Whalen is concerned about exposure in the event this case cannot be settled within the policy limits of $25,000. This is a very real concern for an elderly woman. The Whalen family would appreciate every effort you can put forth to resolve this matter. To avoid litigation and exposure to the

Whalen's personal property, settlement would be appreciated.

Contacts continued between respondent's counsel and Allstate concerning settlement. On October 15, 1993, Ms. Smith wrote respondent's counsel a letter which referenced "our insured: Fred Whalen." While the text of the letter concerned settlement, there was no disclosure that Mr. Whalen had died more than twenty months earlier and Ms. Smith reiterated a settlement offer, "Of course, our offer of settlement in the amount of $2,000 still stands." About a month later, on November 22, 1993, a similar letter was written, likewise without any disclosure of Mr. Whalen's death.

On February 3, 1994, in the Jefferson Circuit Court, respondent filed a personal injury claim against "Fred Whalen." Process was issued but returned unserved on February 16, 1994, with the notation that Fred Whalen was deceased. All parties agree that the complaint was filed within the time allowed by law and that process was issued in good faith. Manifestly, however, the proper party defendant was not named and by the time the complaint was properly amended, time for bringing the claim had expired.

We must first consider the relationship between an insured and an automobile liability insurance carrier and determine whether misconduct by the latter may prevent the running of statutes of limitations in favor of the former. Here it is contended that alleged misconduct of Allstate prevented the statute of limitation from running in favor of movant, administrator of the estate of Fred Whalen, an Allstate insured.

The relationship between an insured and an automobile liability insurance carrier arises by contract. The essence of the contract is the payment of premium costs in return for promised indemnity, defense and associated services. The terms of the contract, however, are heavily regulated by the law as liability insurance is mandatory (KRS 304.39–080) and any inconsis-

tency between the policy and the law will result in reformation of the policy to comply with the law. *State Farm v. Mattox,* Ky., 862 S.W.2d 325 (1993); *Allstate v. Dicke,* Ky., 862 S.W.2d 327 (1993). Policy provisions which invalidate coverage or reduce coverage below statutory minimums have been held invalid on public policy grounds. *Bishop v. Allstate Ins. Co.,* Ky., 623 S.W.2d 865 (1981). Moreover, the Kentucky General Assembly has enacted a statute known as the "Unfair Claims Settlement Practices Act" which proscribes various acts or omissions among which are misrepresenting pertinent facts or insurance policy provisions relating to coverage. KRS 304.12–230. In *State Farm Mutual Auto Ins. Co. v. Reeder,* Ky., 763 S.W.2d 116 (1988), this Court authorized a third party claimant to bring an action for damages under the Unfair Claims Settlement Practices Act and held that not only was the Act enforceable by the Commissioner of Insurance, but a private citizen who had been damaged by the action of such insurance carrier could sue in his own right.

> We find no reason to excuse this matter because it is brought by a third party claimant. The action results from the bad faith in adjusting the claim. If a first-party carrier can be sued for bad faith, there is no reason why a third party carrier cannot also be sued.

*Id.* at 118.

While this Court has not heretofore directly answered whether the misconduct of an insurance carrier in adjusting a claim can be imputed to the insured so as to deny benefit of a statute of limitation, we have come close. In *Miller v. Thacker,* Ky., 481 S.W.2d 19 (1972), an action was brought in Kentucky by one who was an adult under Kentucky law but a minor under the law of Mississippi, her place of domicile. As the states of Kentucky and Mississippi had different ages of majority and different statutes of limitations for personal injury actions, it was contended that by virtue of misrepresentation by in-

surance adjusters, the defendant should be estopped to assert the Kentucky one-year statute of limitations. In a thorough discussion this Court focused on the alleged misconduct of the insurance adjusters and applicable decisional law and concluded that under the evidence presented, "plaintiff was justified in delaying the institution of the action until a reasonable time after the insurer gave notice of its intention to rely upon the expiration of the statutory limitations." *Id.* at 23. Of principal significance here, the Court in *Miller* made no distinction between the insured and the insurer. While the insurer was joined as a party defendant, in the opinion there is no suggestion that the misconduct of the insurer was not attributable to the insured. Likewise in *Burke v. Blair, supra,* no distinction was made between the defendant and his attorney who allegedly induced inaction on the part of plaintiff by fraud or concealment. The Court seems to have assumed that if the evidence justified it, the actions of the attorney would be attributable to the client. We have held that "[a]gency is a legal conclusion to be reached only after analyzing relevant facts," (*Wright v. Sullivan Payne Co.,* Ky., 839 S.W.2d 250, 253 (1992)), and automobile liability insurance policies generally grant the insurer an unconditional right to settle the claim within policy limits without regard to the wishes of the insured. The letter of Crystal G. Whalen, quoted hereinabove, on behalf of her mother-in-law, the decedent's widow, contains an express grant of authority to settle within policy limits and broadly requests termination of litigation.

In view of the mandatory nature of automobile liability insurance, the comprehensive statutory and regulatory control of the industry, the broad discretion allowed insurers in settlement of claims, and public perception that the insurer controls the claims adjustment process, we should have no reluctance in holding that to the extent of available insurance coverage the insurance carrier is the agent of the insured and the death of the insured while legal

obligations remain outstanding does not terminate the agency relationship. The foregoing is consistent with our public policy as expressed in KRS 396.011(2)(b).

The next step in the analysis is to determine whether misrepresentation, concealment or non-disclosure by Allstate, if proven to the satisfaction of the jury, would be sufficient to estop movant from asserting the statute of limitations defense. Initially, it should be observed that it is well settled that "a party may be estopped to plead limitation where he has induced inaction on the part of the plaintiff by his false representation or fraudulent concealment." *Burke v. Blair,* Ky., 349 S.W.2d 836, 838 (1961) (quoted with approval in *Cuppy v. General Accident Fire & Life Assurance Corp,* Ky., 378 S.W.2d 629, 630–31 (1964). In *Miller v. Thacker,* Ky., 481 S.W.2d 19 (1972), discussed *supra,* the Court's legal analysis is highly persuasive. After reviewing prior case law and articulating the "clashing policy considerations," the Court stated:

> Equity's right to prevent by estoppel the pleading of limitations is historic and well recognized. Perhaps we have been over stringent in some of our prior opinions. In any event, since cases differ on their facts and the relationship and relative bargaining positions of the parties change, we can come no closer than saying that the relevant inquiry should be whether or not under all the facts and circumstances the plaintiff was justified in relying upon the representations and activities of the insurance adjuster in delaying filing suit until time had run out.

*Id.* at 23.

As to misleading or failing to disclose, in *Munday v. Mayfair Diagnostic Laboratory,* Ky., 831 S.W.2d 912 (1992), we reviewed various statutes and decisions and discussed application of equitable estoppel principles where fraud, misrepresentation or concealment was alleged as a basis for avoidance of a statute of limitation. We

summarized our decision as requiring "some act or conduct which in point of fact misleads or deceives plaintiff and obstructs or prevents him from instituting his suit while he may do so." *Id.* at 914 (quoting *Adams v. Ison,* Ky., 249 S.W.2d 791, 792 (1952)). We recognized that while fraud ordinarily requires an affirmative act by the party charged, an exception might be found where the law imposed a duty to speak or disclose. We concluded with the holding that failure to comply with a statute which had the purpose of informing the public of the identity of partners doing business under an assumed name estopped the partners from using the statute of limitations.

This Court has recently dealt with the issue at hand where the misconduct was by plaintiff's counsel who did not disclose the death of her client to opposing counsel and settled the case as if the client were still living. In *Kentucky Bar Association v. Geisler,* Ky., 938 S.W.2d 578 (1997), we publicly reprimanded counsel for the misconduct and in our opinion established or reiterated certain important points. We stated that failure to disclose the fact of her client's death amounted to an affirmative misrepresentation in violation of SCR 3.130, and that letters exchanged in the negotiations implied a falsehood. We expressed the view that guidelines should be unnecessary, "... for an attorney to understand that when their client dies, they are under an obligation to tell opposing counsel such information. This seems to be a matter of common ethics and just plain sense." *Id.* at 580.

I believe the majority is wrong when it excuses the misleading nature of Ms. Smith's, the Allstate adjuster's, letter with the facile explanation that "of course, every business person knows that file references are just that: something to assist both the sender's and the addressee's clerical employees in identifying the file into which this correspondence should be placed." This view ignores the positive assertions contained in the letters by which Fred Whalen was identified in the present tense as "our insured" or like reference. Moreover, I believe the majority errs in asserting that "Fred Whalen was Allstate's insured, whether alive or dead." In my view, upon the death of an insured, the benefit of the insurance runs to the decedent's estate or the decedent's successor in interest.

The reality of modern motor vehicle injury claims adjustment places insurance claims adjusters in a central role. When the claim arises, the adjuster and the claimant usually deal directly with one another. If their negotiations fail, the adjuster negotiates with plaintiff's counsel, and even after litigation is begun, the adjuster frequently deals directly with plaintiff's counsel. While we have never held that claims adjustment constitutes the practice of law and limited that endeavor to members of the bar, neither should adjusters be free of the ethical strictures applicable to lawyers when their participation is a part of the judicial process. If insurance adjusters undertake to negotiate with personal injury claimants or their lawyers, honesty is not too much to require. As lawyers are held to the high ethical standards enunciated in *Geisler,* no less should be required of their adversaries in the claims adjustment process.

We have not overlooked *Pospisil v. Miller,* Ky., 343 S.W.2d 392 (1961), *Jackson v. Jackson,* Ky., 313 S.W.2d 868 (1958), and *Hopperton v. Louisville & Nashville R. Co.,* 34 S.W. 895, 17 Ky.Law Rep. 1322 (1896). Perhaps these cases are distinguishable from the case at bar in that they dealt with claims filed outside the time allowed while in this case the claim was timely brought but not against the proper party. *Jackson v. Jackson, supra,* also distinguished *Adams v. Ison, supra,* on the basis of "active concealment of the true facts" and left open the possibility that in such circumstances an estoppel would be discovered. In *Pospisil v. Miller, supra,* despite allegations which strongly suggested waiver and affirmative misrepresentation, and while denouncing the alleged dis-

honesty, this Court granted no relief from plaintiff's failure to timely file her claim. In a harsh legal analysis and notwithstanding alleged serious misrepresentations, this Court said "The insurance adjuster was her adversary and she had no right to rely upon his representations of this nature." [1] *Id.* at 394. This view should be abandoned.

Our decision in *Geisler* represents the enlightened view that lawyers, while adversaries, have a duty to be truthful with one another. Lawyers may not withhold, mislead or misrepresent as to facts so fundamental as whether their clients in personal injury cases are living or dead. *Geisler* also recognized that an overtly false statement is not the only means of misrepresentation. For this, the Court quoted from *Virzi v. Grand Trunk Warehouse & Cold Storage Co.*, 571 F.Supp. 507 (E.D.Mich.1983), as follows: "He was never placed in a position to do so because during the two weeks of settlement negotiations defendants' attorney never thought to ask if plaintiff was still alive. Instead, in hopes of inducing settlement, plaintiff's attorney chose not to disclose plaintiff's death." *Virzi* at 511. In a fine statement of principle, quoted with approval in *Geisler*, the *Virzi* Court said:

> This Court feels that candor and honesty necessarily require disclosure of such a significant fact as the death of one's client. Opposing counsel does not have to deal with his adversary as he would deal in the marketplace. Standards of ethics require greater honesty, greater candor, and greater disclosure, even though it might not be in the interest of the client or his estate.

*Virzi* at 512.

Just as the standards of "the marketplace" no longer apply to dealings between lawyers in settlement negotiations, neither should they apply to insurance adjusters who serve as frontline insurance industry representatives. My view in this regard is strengthened by the recognition that while this Court has direct supervision of the ethical conduct of lawyers, we are without such direct power over insurance adjusters. Our supervision of these participants in the judicial process, for the purpose of enforcing reasonable ethical standards, must be by means of our interpretations of rules, statutes, and common law principles. It is our duty to assure that ethical misconduct not be rewarded.

This aspect of the majority opinion is profoundly disturbing. It seems to allow non-lawyers to act deceptively in their dealings with lawyers. To the extent that non-lawyers participate in the process of tort claim adjustment, they should be held to the same ethical standards as members of the Bar.

STUMBO and WINTERSHEIMER, JJ., join in this dissenting opinion.

---

1. The essential allegations in *Pospisil v. Miller* are as follows:

 The amendment was filed in due time. It charged that a representative of Miller's insurance carrier told the plaintiff that his company had "assumed and recognized its liability to the plaintiff," and that a settlement would be made with her when the bills were all in and when she had fully recovered. It is further alleged that he told her she would, in due course, be fully compensated if she did not consult or employ an attorney. The amendment further asserted that the plaintiff relying on these statements did not consult an attorney until two years after the accident.